Filed 1/10/14  P. v. Bever CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057771 |
| v. | (Super.Ct.Nos. SICRF11-52262 & SICRF11-52786) |
| DAKOTA WALLACE BEVER, | |
| Defendant and Appellant. | OPINION |

APPEAL from the Superior Court of Inyo County.  Brian J. Lamb, Judge.

Affirmed with directions.

Jared M. Hartman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Dakota Wallace Bever appeals from an order revoking his probation and sentencing him to county jail. According to defendant, the order revoking his probation must be reversed because the record does not contain substantial evidence that he willfully failed to complete the Inyo County Drug Court program. He also contends that, even if he violated his probation, his violation was so technical and de minimis that the trial court abused its discretion by sentencing him to county jail instead of reinstating probation. Finally, defendant contends the trial court erred in calculating his custody credits.

We conclude the record contains substantial evidence that defendant willfully failed to complete the drug court program, that the trial court properly revoked his probation, and that the trial court did not abuse its discretion by sentencing him to county jail. However, we order that the minute order awarding presentence custody and conduct credits and the abstract of judgment be amended. As so amended, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Defendant's Plea and Grant of Probation*

Defendant pleaded no contest in case No. SICRF11-52262 to unlawfully possessing a shuriken (Pen. Code,[1] former § 12020, subd. (a)(1), count 1) and to unlawfully possessing drug paraphernalia (Health & Saf. Code, § 11364, count 3), and admitted that he suffered a prior prison term (§ 667.5, subd. (b)). He pleaded no contest

_____

[1] All further undesignated statutory references are to the Penal Code.

2

in case No. SICRF11-52786 to being a felon in possession of ammunition (former § 12316, subd. (b)(1), count 1) and admitted the same prison prior (§ 667.5, subd. (b)).

As part of his plea, defendant signed a drug court agreement and related waiver of rights. Defendant acknowledged he understood he could receive a jail sanction or be removed entirely from the program and have his probation revoked if he "violat[ed] any rule or policy of the Drug Court Program . . . or fail[ed] to fully comply with any of the Drug Court Participant Requirements." Defendant also acknowledged he could have his probation revoked if he "fail[ed] to completely and timely comply with any directive of the Drug Court team (Judge, Probation Officer, or Treatment Provider), fail[ed] to make satisfactory progress in the program, demomstrat[ed] a poor attitude, or engag[ed] in unacceptable behaviors."

The trial court suspended imposition of sentence, placed defendant on formal probation for five years, and ordered him to successfully complete the Inyo County Drug Court program.

*Probation Violation Hearing*

The director of the Inyo County Drug Court program testified that the program consists of four treatment levels, which on average last four months each. The longest a client usually took before moving from the first to the second stage of treatment is four months. Defendant was admitted into candidacy for the program at the end of November 2011 and was formally admitted in the middle of January 2012, but seven months later he was still in the first treatment level.

3

The director testified it was important for defendant to maintain "a very structured daily program seven days a week" by staying in school full time or by looking for work, yet defendant was unable to maintain full-time employment during his treatment and for much of that time he was not in school even part time. Also, he did not follow his probation officer's directions about appropriate dress and appearance when looking for work. Defendant never took "full responsibility" for his actions and shifted blame onto others. Defendant also failed to pay all drug court fees and, although defendant had no unexcused absences, he was late to his meetings despite being told repeatedly to be on time and despite the fact that he was not employed, not in school, and not out all day looking for work, which might explain his tardiness. Being late to even one meeting was sufficient grounds for receiving a jail sanction. More seriously, defendant was dishonest during his treatment and spent time in county jail as a sanction for "fudging" or falsifying attendance cards for his 12-step meetings.

The director testified that although defendant stayed "clean" by never missing a drug test and by proving he was not using alcohol or drugs, he did not "chang[e] [his] thinking" so he was not living a fully "sober" life. Because of his behavior, defendant became a "cancer" on the group. Defendant had a "negative attitude" during group meetings, "was challenging" and "resistant." For instance, defendant reacted negatively when he was told "something he [did]n't want to hear" and he "derail[ed] the group" through his challenging questions and resistance. Defendant "acted on self-will and because of the self-will he was unable to follow clear, specific, measurable directives by his drug court team." Despite having all the support he needed at his disposal, including

4

individual counseling, after seven months defendant still had to be explained the basics of the drug court program. The "primary reason" for defendant's termination from the drug court program was his lack of progress after seven months, not his failure to pay drug court fees.

Defendant's probation officer testified that she directed defendant to actively look for work every day; she required him to submit documentation that he was looking for work and to show that he had actually gone out to different locations doing so. She also discussed creating a resume with defendant and directed him to attend local programs that provided assistance to job seekers. Defendant did not follow her directions about letting his hair grow out and about wearing appropriate clothing when looking for work and did not follow her advice about maintaining contact with people who offered to help him with interview techniques. Likewise, defendant did not maintain his status as a full-time student while looking for work. Despite being told not to make any changes to his course load without first discussing them with his probation officer, defendant dropped all of his classes when she was away on vacation.

During meetings, defendant acted aggressively and reacted to negative or positive criticism in group meetings by "beefing up his chest or looking away and not maintaining eye contact." Defendant acted similarly during a court appearance. When asked by the judge about his behavior, defendant spoke to the judge in the "same kind of aggressive, bolstering, posturing, big man posturing." Defendant's performance during meetings would be good for a week or so after receiving criticism or a sanction, during which he would actively participate in group discussions and role playing. But then he would "go

right back into having a very negative attitude, fail to make eye contact," and act upset. Defendant also lied about his 12-step meeting attendance cards. At first he denied falsifying the signatures, but later he admitted to his group and to his probation officer that he did forge them.

Defendant testified that he believed he was removed from the program because of his "anger issues," his "grievance," his failure to pay drug court fees, and his "personal issues." During meetings, he would apologize for his behavior and seek advice from the group, but the counselors would "slam it back in [his] face." They would tell him, "You need to do this, you need to do that," which defendant felt was "a shut down." Defendant believed the program director sometimes treated him fairly, but at other times treated him unfairly. For instance, she would confront him on his inability to find a job. Defendant succeeded in finding a job at a hardware store, and took a drug test for the job two or three days before he was arrested for violating his probation.

On cross-examination, defendant testified that he was only late to four meetings, that he would go weeks without being late, and that he was fully cooperative during meetings by sharing and being supportive of other participants. He believed the true reasons for his removal were his failure to pay drug court fees and his inability to find work. Finally, defendant denied falsifying his 12-step meeting attendance cards.

Although the court acknowledged that defendant derived some benefit from the program, he did not make sufficient progress. Defendant "had the right attitude," "was committed to his abstinence," and "wanted to make constructive changes in his life, but he was either unable or unwilling" to go the whole way and take the necessary steps to

6

comply with the program. "[H]e could have taken steps to comply and make progress in drug court, which he failed to do, and, therefore, he is responsible for his termination from drug court because of the failure to make timely progress." Therefore, the court found that the People proved a willful violation and revoked defendant's probation.

*Sentencing and Presentence Credits*

At sentencing, defendant's attorney argued that the court should reinstate probation so defendant could continue his sobriety in the community rather than in state prison as recommended by the probation department. According to counsel, the weapon and ammunition charges were not as serious as they appeared because the shuriken and ammunition were found in plain sight in defendant's residence. The prosecutor argued defendant posed a risk to public safety and asked that the court not reinstate his probation.

The trial court acknowledged that defendant stayed clean by not using drugs or alcohol and by not missing or failing any drug tests, but explained that drug court requires more than just abstinence—it requires an almost "monastic conversion" of the defendant's way of thinking and requires total commitment to honesty and compliance with the directives of the drug court team. The trial court noted that defendant is not "an evil person" and is "not committed to a criminal lifestyle," but nonetheless found that defendant did pose a threat to public safety. "He's not trying to hurt people or to take undue advantage," but, the court noted, "he's unpredictable and mercurial, and he can be dangerous when he's confronted or he's angry . . . ." Although the court recognized defendant was "sincere in his attempts to make improvements in his life, . . . the public

7

safety and specific deterrence requires that the seriousness of the offenses be addressed appropriately."

Therefore, the court declined to reinstate probation. The trial court designated count 1 as the principle term in case No. SICRF11-52262 and sentenced defendant to the middle term of two years in county jail and imposed a one-year consecutive term for a prison prior enhancement. In case No. SICRF11-52786, the court struck the enhancement for the prison prior and sentenced defendant to one-third of the middle term of two years, to be served consecutively with case No. SICRF11-52262, for a total sentence of three years eight months in county jail.[2]

In the amended time-served credit sheets, the probation department calculated defendant was entitled to a total of 29 days of credit for presentence custody in case No. SICRF11-52786, and to a total of 459 days in case No. SICRF11-52262, for a total of 488 days. In the court's February 19, 2013 order and in the abstract of judgment, defendant is credited for 242 actual days in custody and for 242 days of conduct credit, for a total of 484 days.

---

[2] In case No. SICRF12-54339, which arose after sentencing in the cases before us, the trial court sentenced defendant to state prison for one year and one day to run concurrent with his jail sentence in case Nos. SICRF11-52262 and SICRF11-52786, with credit for 354 days time served. An abstract of judgment for all three cases was filed on February 21, 2013.

DISCUSSION

THE TRIAL COURT PROPERLY REVOKED DEFENDANT'S PROBATION

AND SENTENCED HIM TO COUNTY JAIL

*Applicable Standards*

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] '"When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772 (*Urke*), fn. omitted.) "A court may not revoke probation unless the evidence supports 'a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation.' [Citation.]" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.)

The trial court's finding of a willful violation is reviewed for substantial evidence. (See *Urke*, *supra*, 197 Cal.App.4th at p. 773.) Under substantial evidence review, we must review the record in its entirety and in the light most favorable to the trial court's ruling to determine whether it contains evidence of reasonable, credible, and solid value from which the court could have concluded that the defendant willfully violated the terms of his probation. (See *People v. Livingston* (2012) 53 Cal.4th 1145, 1170 (*Livingston*).) We must presume every fact in support of the order that the trial court could reasonably have deduced from the evidence, and we may not reweigh evidence or reevaluate the credibility of witnesses. (*Ibid*.) "If the circumstances reasonably justify the trier of fact's

9

findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]"  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

"Reinstatement of probation . . . requires a determination by the trial court that the interests of justice so require.  [Citation.]"  (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 916.)  The trial court's decision to revoke probation instead of reinstating it is reviewed for abuse of discretion.  (*People v. Kelly* (2007) 154 Cal.App.4th 961, 965; *People v. Downey* (2000) 82 Cal.App.4th 899, 909.)  "[G]reat deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.  [Citations.]'  [Citation.]"  (*Urke*, *supra*, 197 Cal.App.4th at p. 773.)  "'Many times circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense.  [Citation.]'  [Citation.]  '"[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ."'  [Citation.]  And the burden of demonstrating an abuse of the trial court's discretion rests squarely on the defendant.  [Citation.]"  (*Ibid.*)

*The Record Contains Substantial Evidence That Defendant Willfully Failed to Successfully Complete the Drug Court Program*

Defendant argues he "substantially complied with [the] terms of [his] probation and made significant progress toward rehabilitation," and contends the record as a whole does not support a finding that he willfully failed to successfully complete the drug court

10

program.  Instead, defendant contends the evidence only supports a finding that he failed to pay drug court fees, but that there is no evidence he had the ability to pay the fees so that failure cannot be the basis of the revocation.  We disagree.

The evidence must be viewed in light of what defendant agreed to do when he pleaded no contest and consented to enrollment in the program.  Defendant acknowledged he could be terminated from the drug court program, and have his probation revoked, if he "fail[ed] to make satisfactory progress in the program, demomstrat[ed] a poor attitude, or engag[ed] in unacceptable behaviors."  The extent of the commitment necessary to succeed in the program was more fully explained to defendant a mere week after his provisional admission to the program when the court admonished him for lack of effort.  The trial court told defendant that "in drug court . . . there's no half measures" or "cutting corners," and that he had "to give it 100 percent."

The testimony introduced at the probation revocation hearing was that successful drug court enrollees take no more than four months to move from the first to the second of four treatment levels, yet after seven months defendant did not progress enough to move up from the first level and he still had not mastered basic principles of the program.  For example, the program director testified that maintaining a structured daily life is crucial to success and that enrollees must either stay in school full time or look for full-time work.  Her testimony and the testimony of defendant's probation officer constitutes substantial evidence that defendant did not exert enough effort in looking for work and failed to follow directives about appropriate appearance and dress when looking for jobs.

11

Further evidence of defendant's lack of effort in looking for work is found in the program director's progress reports to the court. On February 8, 2012, the director reported defendant was progressing well "[w]ith the exception of seeking employment" and "thoroughly following-up on searches," and stated that defendant was given "job search feedback" as a result. Three weeks later, she again reported that defendant was doing well overall "[w]ith the exception of seeking employment . . . ." The director reported on March 28, 2012, that defendant needed to "step it up" in "seeking gainful, predictable employment," and the following month she reported that defendant only spent "a few weekend . . . hours" looking for work, which left him with "a lot of unstructured time on his hands."

Defendant argues that his inability to find a job until a few days before his termination from the program is explained by forces beyond his control, most notably his criminal record and the economic downturn. But the point is not that defendant couldn't actually find a job for seven months, but that the record contains substantial evidence he did not fully commit himself to actively looking for work and following the directions of the program director and his probation officer in doing so. Likewise, there is substantial evidence that defendant did not stay in school full time. Although he signed up for six computer classes, defendant dropped his entire course load when his probation officer was on vacation despite being told not to make any changes without speaking with her first.

With respect to defendant's tardiness to group meetings, defendant contends the program director "talked herself in circles" and contradicted herself on the stand, so her testimony was not reasonable or credible. We do not reweigh evidence or judge credibility of witnesses. (*Livingston*, *supra*, 53 Cal.4th at p. 1170.) And even if we accept defendant's assertion that he was only late to four meetings out of 300, the director testified that the drug court program has a zero-tolerance policy and that being late once is enough for a jail sanction. Moreover, defendant's tardiness was not explained by his being fully employed or enrolled in school the whole time he was in the program.

Finally, the record contains evidence to support the court's finding that defendant did not fully dedicate himself to the program. Defendant did not take full responsibility for his actions and tried to shift blame for his behavior onto other people; he had a "negative attitude" during meetings; and he was "challenging" and "resistant" to his team leaders and reacted negatively to criticism. When defendant heard something he didn't like, he "derail[ed] the group" and failed to actively participate. The program director testified defendant became a "cancer" to the group.

In other words, putting aside the question of defendant's failure to pay drug court fees, the record contains substantial evidence from which the trial court could reasonably have concluded that defendant willfully failed to comply with the strict requirements of drug court that he agreed to and, therefore, that he willfully violated the terms of his probation.

*The Trial Court Did Not Abuse Its Discretion in Sentencing Defendant to County Jail*

At sentencing, the trial court recognized that defendant was not an evil person or necessarily committed to a criminal lifestyle. Nonetheless, it noted that defendant's poor performance on probation showed he was unable to control his impulses and was unpredictable and, under the right circumstances, he might pose a danger to others. A defendant's poor performance on probation, inability to comply with the reasonable terms of probation, and the likelihood of the defendant posing a danger to others if not incarcerated, are appropriate factors for the court to consider when deciding whether to grant or reinstate probation. (Cal. Rules of Court, rule 4.414(b)(2), (3)-(4), (8).) In light of the substantial evidence of defendant's willful failure to complete the drug court program, and of his behavior while in the program, the trial court did not abuse its discretion in declining to reinstate probation and in sentencing defendant to county jail.

## DEFENDANT'S AWARD OF PRESENTENCE CREDITS

## MUST BE CORRECTED ON REMAND

Defendant contends the trial court erred by not awarding him the correct amount of presentence credits.[3] The People also contend the trial court erred, but argue defendant is entitled to less presentence credit than awarded because defendant's time in

---

[3] In his reply brief, defendant concedes the court was not required to credit him in his felony cases for time he spent in county jail on his misdemeanor case before he was arrested on either felony case.

custody after sentencing and commitment is not calculated by the trial court.  We agree with the People.

"A criminal defendant is entitled to accrue both actual presentence custody credits under Penal Code section 2900.5 and conduct credits under Penal Code section 4019 for the period of incarceration prior to sentencing. . . .  [C]onduct credits may be earned under Penal Code section 4019 by performing additional labor (Pen. Code, § 4019, subd. (b)) and by an inmate's good behavior (Pen. Code, § 4019, subd. (c)).  In both instances, the Penal Code section 4019 credits are collectively referred to as 'conduct credits.'  [Citation.]  The court is charged with awarding such credits at sentencing.  (Pen. Code, § 2900.5, subd. (a).)"  (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 395.)

For every two days spent in presentence custody, the defendant is entitled to four days of credit.  (§ 4019, subd. (f).)[4]  "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."  (§ 2900.5, subd. (b).)  Put another way, the second sentence of section 2900.5, subdivision (b), provides "that when consecutive terms are imposed for multiple offenses in a single proceeding, only one of the terms shall receive credit for presentence custody . . . ."  (*People v. Bruner* (1995) 9 Cal.4th 1178, 1192, fn. 9; see also *People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1414-1415.)

---

[4] The parties do not dispute which version of section 4019 applies to defendant.

Defendant seeks presentence credit for days he served in county jail after he was sentenced and committed to serve his sentence. Any time defendant spent in county jail after November 9, 2012, when the court revoked defendant's probation and sentenced him to county jail, is calculated by the sheriff, not by the trial court. (§ 2900.5, subd. (e); see *People v. Johnson* (2010) 183 Cal.App.4th 253, 300.) The trial court was only required to calculate presentence credits, so this appeal from the judgment is limited to that issue. (§ 2900.5, subd. (d).) Any issues regarding calculation of postsentence credit should be addressed to the sheriff or trial court in the first instance, but those credits should not be awarded as part of defendant's presentence credits.

In the court's minute order and in the abstract of judgment, defendant was credited for a total of 484 days in case No. SICRF11-52262. The court awarded no credit in case No. SICRF11-52786. It is not entirely clear how the court came up with its figures. Based on our review of the record, defendant's periods of presentence incarceration and the credit due to him are as follows:

Defendant was arrested in case No. SICRF11-52262 on June 17, 2011 and jailed until June 21, 2011. For this period, he is entitled to five days of actual credit and four days of conduct credit, for a total of *9 days*.

Defendant was arrested in case No. SICRF11-52786 on October 11, 2011 and held in county jail until November 28, 2011. He is entitled to 49 days of credit for actual time in custody and 48 days of conduct credit, for a total of *97 days*.

Defendant spent three days in county jail from January 18-20, 2012, as a drug court sanction, and is entitled to three days of credit for time served and two days of conduct credit, for a total of *five days*.[5]

The record indicates that defendant spent 15 days in county jail from May 2-16, 2012, for some unspecified reason. (See fn. 5, *ante*.) For this period, defendant is entitled to 15 days of credit for time served and 14 days of conduct credit, for a total of *29 days*.

Defendant spent another 46 days in county jail from August 15 through September 29, 2012, for which he is entitled to 46 days of credit for time served and 46 days of conduct credit, for a total of *92 days*.

Finally, defendant was arrested on October 1, 2012 for violating his probation and held in county jail until his sentencing on November 9, 2012. For those 40 days in county jail, defendant is entitled to 40 days of credit for time served and 40 days of conduct credit, for a total of *80 days*.

In summary, defendant is entitled to a total of *312 days* of presentence credit to be applied to his consecutive sentence.

We therefore direct the trial court to amend the minute order to reflect the correct award of 312 days of presentence credits in case No. SICRF11-52262, and direct the clerk of the superior court to amend the abstract of judgment accordingly.

---

[5] The trial court did not credit defendant for this period of presentence incarceration, but the People agree with defendant that he is entitled to such credit.

DISPOSITION

The superior court is directed to correct its award of presentence credits to give defendant a total of 312 days of presentence credits, to amend its minute order and abstract of judgment, and to forward copies of the amended documents to the appropriate agencies.  In all other respects, the judgment of conviction and the sentence are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
J.

We concur:


RAMIREZ
P. J.


HOLLENHORST
J.


18