[No. B146852. Second Dist., Div. Five. Feb. 7, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RAPHAEL DEANDRE COOKSEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for the indicated portions of the opinion.

1408

## COUNSEL

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth N. Sokoler, and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Raphael Deandre Cooksey, appeals from his conviction for second degree robbery. (Pen. Code,[1] § 211.) The trial court also found defendant had previously been convicted of a serious felony. (§§ 667, 1170.12.) He also appeals from the judgment imposed after his probation was revoked in a case where he had earlier pled guilty to discharging a firearm into an inhabited dwelling. (§ 246.) In the published portion of this opinion, we discuss whether a lesser included offense instruction should have been given. Additionally, in the published portion of the opinion, we discuss whether defendant should have received credit for time served on his

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

subordinate state prison term resulting from his probation violation. We modify the judgment to increase the amount of presentence credits.

■ First, defendant argues the jurors should have been instructed on the lesser included offense of grand theft from the person. (§ 487, subd. (c).) On April 1, 2000, at approximately 1:00 p.m., Leticia Vasquez purchased a newspaper near Snappy Market. As Ms. Vasquez walked away, defendant ran toward her. Defendant grabbed Ms. Vasquez from behind with both hands. Defendant tried to take the small purse Ms. Vasquez carried. Ms. Vasquez struggled with defendant for approximately two minutes before he successfully took her purse. Ms. Vasquez was scared. She screamed and cried. Ms. Vasquez yelled as defendant ran away. Two motorists observed the incident. Michael Dirks testified defendant was "tussling" with Ms. Vasquez. James Andrews stated defendant was "wrestling" with Ms. Vasquez. Mr. Andrews saw defendant run away carrying a black object that resembled a purse. Defendant got into the passenger seat of a Jeep parked at the Snappy Market. The driver of the Jeep immediately drove away. No defense witnesses testified.

Defendant argues the trial court improperly refused to instruct the jury on the lesser offense of grand theft from the person. Defense counsel requested the instruction based on a alleged lack of sufficient force to constitute a robbery. The trial court stated: "I find, based upon the facts in this case, that there is no deficiency with regards to the prosecution's theory of the case and the evidence by which the jury could find on the lesser-included."

■ A trial court is obliged to instruct, even without a request, on the general principles of law which relate to the issues presented by the evidence. (§§ 1093, subd. (f), 1127; *People v. Wims* (1995) 10 Cal.4th 293, 303 [41 Cal.Rptr.2d 241, 895 P.2d 77]; *People v. Turner* (1990) 50 Cal.3d 668, 690 [268 Cal.Rptr. 706, 789 P.2d 887]; *People v. Grant* (1988) 45 Cal.3d 829, 847 [248 Cal.Rptr. 444, 755 P.2d 894]; *People v. Melton* (1988) 44 Cal.3d 713, 746 [244 Cal.Rptr. 867, 750 P.2d 741].) When the evidence is minimal and insubstantial, there is no duty to instruct. (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1232-1233 [249 Cal.Rptr. 71, 756 P.2d 795]; *People v. Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337].) The California Supreme Court recently reiterated: "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the

greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094], original italics; *People v. Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513]; see also *People v. Birks* (1998) 19 Cal.4th 108, 118 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) We conduct independent review of issues pertaining to instructions. (*People v. Waidla* (2000) 22 Cal.4th 690, 733, 737 [94 Cal.Rptr.2d 396, 996 P.2d 46].) ▆▆▆ Grand theft person, depending on the facts, can be a lesser included offense of robbery. (*People v. Ortega* (1998) 19 Cal.4th 686, 699 [80 Cal.Rptr.2d 489, 968 P.2d 48]; *People v. Morales* (1975) 49 Cal.App.3d 134, 139-141 [122 Cal.Rptr. 157].)

Section 211 defines robbery as: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The evidence established all of the elements of robbery in this case, including force. In addition, the evidence definitely demonstrated an element of fear. But there is no evidence which would support a finding that only the crime of grand theft from the person was committed. The uncontradicted evidence indicated: defendant physically grabbed Ms. Vasquez; Ms. Vasquez and defendant struggled for two minutes before he successfully ran off with her purse; Ms. Vasquez was scared; Ms. Vasquez screamed and cried; and as he ran away, Ms. Vasquez screamed at defendant. Such constituted the crime of robbery with the attendant elements of force and fear. There is no substantial evidence defendant merely committed the included offense of grand theft from the person.

Although not conclusive, the facts in this case are materially different from those present in a decision relied upon by defendant, *People v. Roberts* (1976) 57 Cal.App.3d 782, 785, 787, footnote 1 [129 Cal.Rptr. 529], disapproved on another point in *People v. Rollo* (1977) 20 Cal.3d 109, 120, footnote 4 [141 Cal.Rptr. 177, 569 P.2d 771]. In *Roberts*, the defendant appealed from a robbery conviction and argued that there was insufficient evidence to support the judgment. The evidence on the force and fear issue was described by the *Roberts* court as follows: "On October 5, 1974, at approximately 11 p.m., Carla Jean Spencer was returning to her parked car after spending an evening at the Hollywood Park Race Track. Ms. Spencer left the track prior to the ninth race. At her car, while attempting to remove the car keys from her purse, she heard a 'shuffle of steps to my left and somebody come right under my left arm, grabbed my handbag jerked it right down and snapped it off the handle.'" (*People v. Roberts, supra,* 57 Cal.App.3d at p. 785.) The court held: "Certainly, the evidence that the purse was grabbed with such force that the handle broke supports the jury's implied finding that such force existed. (See 1 Witkin, Cal. Crimes (1963)

§ 439, p. 406; Annot., Purse Snatching as Robbery or Theft, (1972) 42 A.L.R.3d 1381.)" (*People v. Roberts, supra,* 57 Cal.App.3d at p. 787, fn. omitted.) In dictum in the omitted footnote, the Court of Appeal addressed the issue concerning the duty to instruct on the included offense, grand theft from the person. In dictum, the court noted: "While this evidence sufficiently establishes the corpus delicti of robbery, it is susceptible of an interpretation (perhaps remote) which, if accepted, would render the defendant guilty of the lesser included offense of grand theft from the person. (Pen. Code, § 487, subd. 2.) Consequently, if an instruction on such lesser included offense is requested on retrial, it must be given. (*People v. Morales,* [*supra,*] 49 Cal.App.3d [at p.] 139 . . . .)" (*People v. Roberts, supra,* 57 Cal.App.3d at p. 787, fn. 1.) The present case is far different from the *Roberts* dictum. *Roberts* involves a momentary grabbing of the purse, not a two-minute struggle where Ms. Vasquez was screaming and crying.

In the decision cited in *Roberts, People v. Morales, supra,* 49 Cal.App.3d at pages 138-146, the Court of Appeal did address the merits of a grand theft from the person lesser included offense contention in the context of a robbery theory. The facts in *Morales* were as follows: "On August 17, 1973, Mrs. Garnet Libby and her mother, Mrs. Minnie Smith, were walking home from the store down a residential street in Anaheim. Defendant passed the two ladies walking in the opposite direction. He then turned and, approaching Mrs. Smith from behind, grabbed her purse and fled down the street. A witness who was standing across the street testified that defendant pushed Mrs. Smith as he seized the purse. Mrs. Smith fell to the ground, suffering a dislocation and fracture of her elbow. [¶] Mrs. Smith was 79 years old. The evidence indicated that before the crime she was in relatively good health and led a very active physical life for someone of her age. After the purse-snatching incident, Mrs. Smith was taken to a hospital where minor surgery was performed on her elbow. She remained in the hospital for three days and then returned home. . . ." (*People v. Morales, supra,* 49 Cal.App.3d at pp. 137-138.) Despite the fact the victim was hospitalized after falling, the Court of Appeal concluded a grand theft lesser included offense instruction should have been given. The court's analysis in this regard was as follows: "We think that the evidence in this case left sufficiently open the question of whether the element of force was present so as to entitle the defendant to have the jury consider the matter. The witness' distance from the event, her preoccupation with other matters, her inability to remember details, and the fact that the victim fell backwards all arguably cast doubt upon the accuracy of her testimony that the defendant deliberately pushed the victim. It is true that the bare fact that Mrs. Smith fell tends to show that she was shoved in some manner. But it is also plausible that she was startled and lost her balance, or that she fell in an attempt to turn and catch a glimpse of the

culprit. It is also true that Mrs. Romero was quite positive if not vehement in her assertion that defendant pushed Mrs. Smith. But if the evidence disclosed reasons to doubt this testimony, the witness' expression of certainty could hardly empower the court to ignore those reasons and withdraw the evidentiary issue from the jury. Such reasons did exist here. The circumstances surrounding Mrs. Romero's observation, as well as the rapidity of the event, were such as naturally to give rise to some question regarding the reliability of her perception. Also, her testimony was not entirely consistent with the undisputed evidence as to how Mrs. Smith fell. If, as described by Mrs. Romero, the defendant hit Mrs. Smith from behind 'with such a hard force that she fell immediately,' it is unlikely that Mrs. Smith would have fallen backwards toward the defendant. Given such reasons to question Mrs. Romero's version of the event, her adamant insistence on the correctness of her testimony could not defeat defendant's right to argue to the jury that she was mistaken. Such careful scrutiny by us is compelled by the extreme importance of this issue in the context of this case. The alleged use of force by defendant served not merely to raise the theft offense to a robbery; it was also the sole basis for imputing to defendant the malice for first degree murder." (*Id.* at pp. 140-141, fn. omitted.)

We need not address the question of whether *Morales* was correctly decided. (See *People v. Morales, supra,* 49 Cal.App.3d at pp. 146-149 (dis. opn. of Gardner, P. J.).) Rather, the facts in this case are far different from *Morales*. In *Morales*, there was only a momentary contact with the victim; not as in this case a two-minute struggle between defendant and Ms. Vasquez where they fought over the black purse. Therefore, neither *Roberts* nor *Morales* is the controlling authority. The trial court correctly refused to instruct on grand theft from the person.

█ Second, defendant argues that he is entitled to additional credits pursuant to section 2900.5, subdivision (a). Defendant was sentenced as follows. For the crime of robbery, defendant was sentenced to 10 years in prison. The 10-year sentence was the result of a 5-year sentence being doubled pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1). As to the robbery conviction, defendant received 382 days of presentence credits. Additionally, defendant was on probation for discharging a firearm into a residence, in violation of section 246. He was found in violation of probation and received a consecutive one-year, eight-month sentence. Defendant received no credit for time served on the probation violation matter. Further, the trial court imposed a five-year section 667, subdivision (a) enhancement.

The pertinent facts in connection with defendant's prior conviction for discharging a firearm into a residence are as follows. Defendant was arrested

for discharging a firearm into a residence on April 11, 1999. On June 2, 1999, in the former municipal court, defendant pled guilty to the discharging a firearm charge. On the same date, defendant was placed on probation for three years on various terms and conditions, including the requirement that he serve one year in the county jail. On April 1, 2000, after his release from county jail and while still on probation, defendant was arrested for the robbery of Ms. Vasquez. On April 5, 2000, defendant's probation was revoked in the discharging a firearm case. Defendant was eventually sentenced to prison on the discharging a firearm case on December 12, 2000. The 20-month discharging a firearm sentence was the subordinate term. The 10-year robbery sentence was the principal term.

The trial court credited defendant with all of his time served on the robbery case. But defendant was denied any presentence credits on the one-year, eight-month subordinate term for discharging a firearm into a residence. The sole ground relied upon by the trial court for denying presentence credits on the subordinate term was the provisions of section 2900.5, subdivision (b) which states: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." However, the California Supreme Court has held credit is to be applied for time served on a subordinate term resulting from a probation violation. (*People v. Riolo* (1983) 33 Cal.3d 223, 228-229 [188 Cal.Rptr. 371, 655 P.2d 723]; *People v. Lacebal* (1991) 233 Cal.App.3d 1061, 1064-1065 [285 Cal.Rptr. 6].)

The sole remaining issue relates to the amount of additional credit for time served defendant is to receive on his subordinate term. Defendant is entitled to one-year credit for time served as a probation condition. The one-year term would consist of 243 days actually served plus 122 days of conduct credit. However, defendant is not entitled to any credits on the one-year eight-month subordinate term for time spent after April 5, 2000, when his probation was revoked. This is because consecutive sentencing occurred on December 12, 2000. The controlling statutory language is that in the second sentence in section 2900.5, subdivision (b), which as previously noted states, "credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." As of April 5, 2000, defendant was subject to a "single period of custody attributable to multiple offenses" within the meaning of section 2900.5, subdivision (b). He was subject to custodial restraint because of the April 1, 2000, robbery arrest as well as the April 5, 2000, summary probation revocation order. When

defendant was sentenced to prison for robbery on December 12, 2000, he was given presentence credits from the date of his arrest, April 1, 2000. Section 2900.5, subdivision (b), only permits credit to be awarded "once" when *consecutive* sentences are imposed as occurred here. Therefore, defendant is not entitled to credit against the subordinate one-year eight-month term for the time spent in custody from April 5, 2000; that credit was awarded on the consecutive principal term. The previously cited decisions of *People v. Riolo, supra,* 33 Cal.3d at pages 228-229 and *People v. Lacebal, supra,* 233 Cal.App.3d at pages 1064-1065, although controlling in terms of the one-year worth of additional credits discussed above do not address the specific issue of the postprobation revocation credits.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

The judgment is modified to award defendant 365 days, credit on the subordinate terms which includes 122 days of conduct credits. The credits are only to apply to the 20-month subordinate term. The clerk of the superior court is to prepare an amended abstract of judgment which separately reflects the amount of presentence credits on the principal and subordinate terms. The judgment is affirmed in all other respects.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied March 1, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 15, 2002.

---

*See footnote, *ante,* page 1407.