Filed 5/31/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMIE FELICIANO SANTA ANA,<br><br>    Defendant and Appellant. | H042604<br>(Monterey County<br>Super. Ct. No. MS317650A) |

In this case, appellant Jamie Feliciano Santa Ana was convicted of misdemeanor petty theft (Pen. Code, §§ 484, subd. (a), 486)[1] by plea and placed on probation with imposition of sentence suspended. At the time she committed the theft, appellant was on probation in an unrelated case, Monterey County Superior Court Case No. SS111352A (the earlier case).[2] At the same sentencing hearing, probation was revoked and reinstated in the earlier case and probation was granted in this case. In each case, the trial court imposed a jail term as a condition of probation. In the earlier case, the trial court awarded credits for appellant's presentence custody (from the date of arrest for theft through the date of sentencing) against the probationary jail term. In this case, the trial court denied credit against the probationary jail term, which was ordered to be served consecutively to the probationary jail term imposed in the earlier case.

_____

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] On our own motion, we take judicial notice of the appellate record in *People v. Feliciano* (Aug. 21, 2014, H042604) [nonpub. opn.] (case No. SS111352A). (Evid. Code, §§ 452, subd. (d); 459.) In that case, appellant was prosecuted under the name "Jamie Feliciano."

On appeal in this case, appellant challenges the trial court's denial of all custody credits against the jail term imposed as a condition of probation.[3] A majority of the appellate division of the Monterey County Superior Court (appellate division) affirmed the judgment and upheld the denial of custody credits on the ground that section 2900.5, subdivision (b) (hereafter 2900.5(b)) "permits the award of only one set of credits 'for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed[.]' " One judge dissented. The appellate division certified this case for transfer to our court because of the split decision, and we ordered it transferred to us for hearing and decision. (Cal. Rules of Court, rules 8.1002, 8.1008.)

Appellant maintains that the trial court erred by denying custody credits for her presentence custody against the consecutive probationary jail term imposed in this case. Appellant asserts that she is entitled to dual credits for that period of presentence custody because it was entirely attributable to the single theft crime, which occurred when she took some items from a Walmart store without paying for them. Thus, this case presents the novel issue whether the credit limitation established by the second sentence of section 2900.5(b) applies where there is a single period of custody to be credited arising from the commission of one new offense, there are dual custodial restraints, and, at the time of sentencing in the two cases, the trial court imposes a probationary jail term in one

---

[3] Section 1237.1 does not require this appeal to be dismissed because the issue on appeal is not whether the court made "an error in the calculation of presentence custody credits" (§ 1237.1), but rather whether subdivision (b) of section 2900.5 precludes dual credits against a consecutive probationary jail term. (Cf. *People v. Delgado* (2012) 210 Cal.App.4th 761, 765-767.) Neither party has suggested that this appeal has been rendered moot even though a very short probationary jail term (10 days) was imposed in this case. In any event, when an appeal presents an important issue that has been rendered moot, we may exercise our discretion to decide the issue if it may recur but evade appellate review. (See *People v. Segura* (2008) 44 Cal.4th 921, 925, fn. 1; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122.)

case and imposes a consecutive probationary jail term in the other case. We conclude that it does. Accordingly, we affirm the judgment (the order granting probation).

## *Procedural History*

On August 24, 2011, in the earlier case, appellant pleaded no contest to three crimes committed on or about July 16, 2011: a felony violation of Vehicle Code section 2800.2, subdivision (a) (count 1); a misdemeanor violation of former Health and Safety Code section 11377, subdivision (a) (count 2 as amended); and a misdemeanor violation of Vehicle Code section 20002, subdivision (a) (count 3). The court placed her on formal probation on the conditions, among others, that she obey all laws, not use narcotics or other controlled substances without prescription, and submit to narcotics testing.

In 2011, probation was revoked and reinstated in the earlier case.[4]

In this case, a complaint, filed on December 24, 2013, charged appellant with committing a misdemeanor violation of section 484, subdivision (a), on or about December 21, 2013. On December 24, 2013, appellant waived formal arraignment and entered a plea of not guilty. Bail was set at $3,500. Appellant remained in custody.

Also on December 24, 2013, a notice of violation of probation was filed in the earlier case. It alleged that appellant had violated section 484 on or about December 19, 2013. On December 24, 2013, appellant was arraigned on the notice of violation of probation, and probation was summarily revoked. No bail was allowed, and appellant was remanded to the custody of the Monterey County Sheriff.

---

[4] In the earlier case, on October 21, 2011, appellant admitted an allegation that she violated probation by failing to abstain from the use of narcotics in that a urinalysis, to which she had submitted on October 18, 2011, had produced a presumptive positive result for methamphetamine. On November 23, 2011, the court formally revoked and then reinstated probation; it ordered appellant to serve 120 days in jail and awarded total credit of 77 days.

On January 8, 2014, appellant appeared in the earlier case. A formal hearing on the alleged violation of probation was set for January 17, 2014. No bail was allowed, and appellant remained in custody.

Both cases were heard on January 17, 2014.

On January 17, 2014, in this case, appellant filed a written waiver of rights and plea form. Following advisements and waivers on the record, appellant entered a plea of no contest to theft as charged. The matter was referred to the probation department for a presentence report, and a sentencing hearing was set for February 14, 2014 at 8:45 a.m. in Salinas courtroom 3. Bail remained set at $3,500, and appellant remained in custody.

On January 17, 2014, in the earlier case, the court found appellant violated probation based on her plea in this case. The matter was referred to the probation department for a supplemental probation report. The matter was continued to February 14, 2014 at 8:45 a.m. in Salinas courtroom 3. No bail was allowed, and appellant remained in custody.

A probation report, which was filed on February 14, 2014 for the hearing in both cases, indicated that, on December 21, 2013, appellant violated section 484 and she was arrested and booked into Monterey County Jail the same day. The probation officer's credit calculation inconsistently indicated that appellant was held in custody in the Monterey County Jail from December 19, 2013 through February 14, 2014.[5] The record before us indicates that appellant was booked into jail and that a probation hold was immediately placed on her.[6]

At the sentencing hearing on February 14, 2014, the trial court revoked and reinstated probation on the original terms and conditions and ordered appellant to serve

---

[5] As appellant acknowledges, this period includes 58 actual days of custody.

[6] "A hold refers generally to any document or agreement or understanding, formal or informal, used to prevent the release of a prisoner." (*In re Joyner* (1989) 48 Cal.3d 487, 490, fn. 2 (*Joyner*).)

4

165 days in county jail in the earlier case. The court awarded total custody credit of 165 days for time served, which included 111 actual days and 54 days of conduct credit. In this case, the trial court placed appellant on probation subject to certain terms and conditions, including serving a term of 10 days in county jail consecutive to the probationary jail term imposed in the earlier case. The court awarded no credit against the probationary jail term imposed in this case.

On February 25, 2014, appellant filed a notice of appeal in this case.

A majority of a three-judge panel of the appellate division affirmed the judgment. One judge wrote a dissenting opinion. In reaching contrary results, both the majority and the dissenting opinions quoted at length from *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*). *Bruner* established that "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding," the defendant must demonstrate that "but for" the conduct leading to his current sentence, the defendant "would have been free, or at least bailable, during that presentence period." (*Id.* at p. 1180, see *id.* at pp. 1193-1194.)

The majority opinion of the appellate division decided that "even assuming, arguendo, that appellant would not have been in custody pending sentencing 'but for' the conduct in the case on appeal, section 2900.5, subdivision (b) nevertheless mandates that credit be given only once 'for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.' " The majority's conclusion appears to have been based on *People v. Blunt* (1986) 186 Cal.App.3d 1594 (*Blunt*).

The dissenting judge disagreed that the single period of custody at issue in this case was attributable to multiple offenses, and she believed appellant was entitled to dual credits. She stated: "There is no question that the appellant would not have been in custody, during the period [at issue], . . . 'but for' the new felony matter." The judge recognized that where a defendant commits a new crime and the court imposes

5

punishment in two separate cases (for the new crime and for an earlier crime following probation revocation), "the court is sentencing the defendant for multiple offenses." But she distinguished the situation where the court revokes probation in a case based on the new offense but then reinstates probation and imposition of sentence remains suspended. In the dissenting judge's view, in the latter situation, "the defendant is not yet being sentenced on the underlying offense," and, consequently, "the defendant is not being sentenced on multiple offenses and the 'but for' test applies." As to any legitimate concern regarding dual credits, the dissenting judge suggested that courts seek a *Johnson* or *Burks* waiver.[7]

II

*Discussion*

A. *Background*

At the time of the theft offense and through the time of sentencing, section 2900.5, subdivision (a), provided in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not

_____

[7] In *People v. Johnson* (1978) 82 Cal.App.3d 183, the court held that "a defendant who has served one year in jail as a condition of probation and who thereafter violates probation may be sentenced to an additional period of up to one year in jail if he knowingly and intelligently waives the provisions of Penal Code's 2900.5." (*Id.* at pp. 184-185; see § 19.2 ["In no case shall any person sentenced to confinement in a county or city jail . . . on conviction of a misdemeanor, or as a condition of probation upon conviction of either a felony or a misdemeanor . . . be committed for a period in excess of one year . . . ."].) In *People v. Burks* (1998) 66 Cal.App.4th 232 (*Burks*), the court held that "when a defendant agrees to waive custody credits after violating probation, the waived credits may not be recaptured when probation is violated again, unless the agreement expressly reserves that right." (*Id.* at p. 234.) In *People v. Arnold* (2004) 33 Cal.4th 294, the Supreme Court held that "when a defendant knowingly and intelligently waives jail time custody credits after violating probation in order to be reinstated on probation and thereby avoid a prison sentence, the waiver applies to any future use of such credits should probation ultimately be terminated and a state prison sentence imposed." (*Id.* at p. 298.) The court adopted the rationale and holding of *Burks*. (*Id.* at p. 308.)

6

limited to, any time spent in a jail . . . , all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019 . . . shall be credited upon his or her term of imprisonment . . . ." (Stats. 2013, ch. 59, § 7, pp. 1430-1431; Stats. 2011, ch. 15, § 466, p. 480.) For purposes of section 2900.5, the phrase " 'term of imprisonment' " "includes any period of imprisonment imposed as a condition of probation." (Stats. 2013, ch. 59, § 7, p. 1431 [§ 2900.5, subd. (c)]; Stats. 2011, ch. 15, § 466, p. 480 [same]; see § 2900.5, subd. (c).) It is the trial court's duty to determine the dates of custody and the total number of days to be credited pursuant to section 2900.5. (Stats. 2013, ch. 59, § 7, p. 1431 [§ 2900.5, subd. (d)]; § 2900.5, subd. (d).)

At all relevant times, section 2900.5(b) stated: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (Stats. 2013, ch. 59, § 7, p. 1431; Stats. 2011, ch. 15, § 466, p. 480; see § 2900.5(b).) The second sentence of subdivision (b) was originally added to former section 2900.5 by a 1978 amendment. (Stats. 1978, ch. 304, § 1, p. 632.) Although a new section 2900.5 was added in 1991 (Stats.1991, ch. 437, § 10, eff. Sept. 18, 1991, operative Jan. 1, 1995), the language of section 2900.5(b) has remained identical to the language of subdivision (b) of former section 2900.5 as amended in 1978 (the 1978 version).

The application of section 2900.5 and its predecessor has been addressed in a variety of scenarios. In *In re Rojas* (1979) 23 Cal.3d 152 (*Rojas*), the petitioner was charged with murder while he was serving a state prison sentence for an unrelated manslaughter conviction. (*Id*. at p. 154.) The petitioner was transferred to county jail to await trial on the murder charge. (*Id*. at pp. 154-155.) Following his conviction of second degree murder, the court imposed a state prison term concurrent to his prior

7

sentence for manslaughter. (*Id*. at p. 155.) The "sole question" was whether, under the subdivision (b) of former section 2900.5 (now the first sentence of § 2900.5(b)), the defendant was entitled to credit against his second degree murder sentence for the days spent in county jail awaiting trial on, and disposition of, the murder charge when he would otherwise have been in state prison serving his manslaughter sentence, against which he was receiving credit for the county jail custody. (*Rojas*, *supra*, at p. 155.) The Supreme Court determined that former section 2900.5 did not entitle a criminal defendant "to credit towards his sentence for a period of presentence time spent in custody, if during that same period the defendant was simultaneously serving a prison term for a prior unrelated offense." (*Rojas*, *supra*, at p. 154.)

In *Joyner*, *supra*, 48 Cal.3d 487, the petitioner sought "presentence custody credits against his California sentence for custody time in Florida and California from the date a 'hold' was placed against him for the California offenses until he was sentenced in California, all of which time ha[d] already been credited against petitioner's Florida sentence." (*Id*. at p. 489.) The Supreme Court considered the first sentence of subdivision (b) of the 1978 version. (*Joyner*, *supra*, at p. 489.) The court held: "[A] period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*Ibid*.) It found "no persuasive indication that section 2900.5 was intended to achieve the goal of making the net time served on separately imposed concurrent terms equal to the net time served on concurrent terms imposed at one time in a single proceeding." (*Id*. at p. 494.)

In *Bruner*, the defendant, a parolee, was arrested for parole violations, and he was found in possession of cocaine during the search incident to that arrest. (*Bruner*, *supra*, 9

8

Cal.4th at p. 1181.) The defendant remained in custody on the parole hold. (*Ibid*.) His parole was ultimately revoked based on the parole violations and his possession of cocaine. (*Ibid*.) The defendant received full credit against a 12-month parole revocation term for the time he had spent in jail between the date of that arrest and the date on which the parole revocation term was imposed. (*Ibid*.) While the defendant was serving his parole revocation term, he was separately charged with possession of cocaine. (*Ibid*.) Defendant pleaded guilty and the court imposed a 16-month prison term, which ran concurrently to his parole revocation term by operation of law. (*Id*. at pp. 1181-1182.) "The [trial] court specifically found that [the] defendant was not entitled to presentence credit." (*Id*. at p. 1182.) On appeal, the defendant asserted that he was entitled to credit against the new sentence for the time spent in custody between the date of arrest and the date he was sentenced for cocaine possession. (*Ibid*.)

The California Supreme Court in *Bruner* applied the first sentence of subdivision (b) of the 1978 version. It concluded in *Bruner* that "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of *Joyner* should apply." (*Bruner*, *supra*, 9 Cal.4th at p. 1180.) It stated: "*Joyner* concluded . . . that the statute is intended only to prevent inequalities in total confinement among defendants, each similarly sentenced in a *single proceeding*, which inequalities arise solely because one defendant suffered presentence confinement while another did not. Section 2900.5 is not intended to bestow the windfall of duplicative credits against all terms or sentences that are separately imposed in multiple proceedings." (*Id*. at p. 1191.)

In *Bruner*, the Supreme Court observed that post-*Joyner* decisions had applied "a general rule that a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*Bruner*, *supra*, 9 Cal.4th at p. 1191.) Those

9

cases had reasoned that "his criminal sentence may not be credited with jail or prison time attributable to a parole or probation revocation that was based *only in part* upon the same criminal episode. [Citations.]" (*Ibid*.) *Bruner* concluded that those "authorities construe[d] the statute correctly." (*Ibid*.)

*Bruner* held: "[C]onsistent with *Rojas* and *Joyner*, that where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint. Accordingly, when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was 'a' basis for the revocation matter as well." (*Bruner*, *supra*, 9 Cal.4th at pp. 1193-1194.) The court concluded that "[b]ecause defendant has not shown that he could have been free during any period of his presentence custody but for the same conduct that led to the instant conviction and sentence, he is not entitled to credit on that sentence for the period of presentence restraint." (*Id*. at p. 1195.)

In *Bruner*, the defendant complained that "the 'strict causation' rule" was unfair "because it requires a prisoner seeking credit for a multiple-cause presentence restraint to 'prove a negative'—i.e., that the restraint would not have occurred but for the current crimes alone." (*Bruner*, *supra*, 9 Cal.4th at p. 1193.) The Supreme Court noted that the "defendant's burden, while onerous, [was] not necessarily impossible," citing *People v. Williams* (1992) 10 Cal.App.4th 827 (*Williams*). (*Bruner*, *supra*, 9 Cal.4th at p. 1193, fn. 10.)

In *Williams*, the defendant, who had been on probation for a misdemeanor, was charged with 13 felony counts after engaging in new criminal conduct. (*Williams*, *supra*, 10 Cal.App.4th at pp. 829-830.) The defendant entered a negotiated plea of no contest to

10

one count of violating section 264.1 (rape in concert by force), and the remaining counts were dismissed. (*Williams*, *supra*, at pp. 830, 833.) In the earlier misdemeanor case, the defendant had already received credit for his time in custody from the date of arrest on the new charges to the date of sentencing on the misdemeanor following revocation of probation for his failure to "obey all laws." (*Id*. at pp. 830-831.) In the felony case before it, *Williams* concluded that the defendant was also entitled to full credit for the time spent in presentence custody (from the date of arrest on the new charges to the date of sentencing) because that custody was wholly attributable to proceedings related to the criminal conduct for which he was convicted (§ 264.1). (*Williams*, *supra*, at pp. 830-835.) The appellate court relied on the trial court's observation that the only proof that the defendant had failed to obey all laws was his new criminal conduct (*id*. at p. 833) and on the fact that the 13 charged felony counts had been "connected or related to each other, all describing the criminal conduct for which [the defendant] was in presentence custody and [all] perpetrated against the same victim." (*Id*. at p. 834.) *Williams* did not consider application of the second sentence of section 2900.5(b).[8]

The Supreme Court has acknowledged that "[a]lthough the statutory language in section 2900.5 'may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts.' (*People v. Adrian*

---

[8] In *Williams*, the sentence imposed on the defendant in his earlier misdemeanor case appears to have overlapped with the sentence imposed in the felony case being reviewed on appeal. (*Williams*, *supra*, 10 Cal.App.4th at pp. 830-831; see former § 4019 [Stats. 1982, ch. 1234, § 7, p. 4553.) The Supreme Court stated in *Bruner*: "A concurrent term is one that begins on the day it is imposed and is not postponed until the completion of a prior term. Thus, a concurrent new term 'overlaps' the prior term to the extent service of the earlier sentence is not complete on the day the new term is imposed. '[S]entences may be concurrent, i.e., may run together, without either starting together or ending together. What is meant is that they run together during the time that the periods overlap.' (*In re Roberts* (1953) 40 Cal.2d 745, 749.)" (*Bruner*, *supra*, 9 Cal.4th at p. 1182, fn. 3.)

(1987) 191 Cal.App.3d 868, 874.)" (*In re Marquez* (2003) 30 Cal.4th 14, 19.) " 'Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is "difficult to interpret and apply." [Citation.] As we have noted, in what is surely an understatement, "[c]redit determination is not a simple matter." ' [Citation.]" (*Ibid*.)

B. *First Sentence of Section 2900.5(*b*)*

We begin with the first sentence of section 2900.5(b): "[C]redit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." The period of presentence custody at issue satisfies this requirement.

In this case, the period of custody at issue, which began with appellant's arrest in December 2013, stemmed from one incident of misconduct (theft), not from "multiple, unrelated incidents of misconduct" as in *Bruner*. (*Bruner*, *supra*, 9 Cal.4th at p. 1193.) There appears to be no dispute that appellant was held under dual restraints for the entire period of custody following her theft arrest until the date of sentencing on February 14, 2014. Consequently, the entire period of custody at issue was "attributable to proceedings related to the same conduct for which the defendant has been convicted" (2900.5(b)) in this case.

Further, assuming *Bruner* is applicable here, appellant's theft was the factually dispositive, or "but for," cause of her presentence custody following her arrest for theft. It is not disputed that appellant "could have been free" during that period of custody "but for the same conduct that led to" her conviction and probationary jail term in this case. (*Bruner*, *supra*, 9 Cal.4th at p. 1195.)

12

C.  *Second Sentence of Section 2900.5(b)*

Having cleared the hurdle of the first sentence of section 2900.5(b), we turn to the second sentence of that subdivision:  "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

In her opening brief, appellant argues that, under a plain reading of the statute, the presentence custody at issue was not "attributable to multiple offenses" within the meaning of section 2900.5(b) because it was attributable to only the single theft offense. Appellant also maintains that the trial court did not impose "consecutive sentences" within the meaning of section 2900.5(b) because the term "sentence" refers to the imposition of punishment on the offenses of conviction.

Respondent asserts that the single period of custody following appellant's arrest for theft was attributable to multiple offenses, citing *Blunt*, *supra*, 186 Cal.App.3d 1594, the case upon which the majority of the appellate division relied.  The case is not helpful.

In *Blunt*, the San Bernardino County Superior Court placed the defendant on probation for maintaining a place for sale or use of a controlled substance (Health & Saf. Code, § 11366), and he was subsequently arrested in Los Angeles and charged with being under the influence of a drug.  (*Blunt*, *supra*, 186 Cal.App.3d at pp. 1596, 1598.)  There was no evidence in the record that the "defendant was under dual restraints during his Los Angeles custody."  (*Id*. at p. 1600.)  In the San Bernardino County case, the defendant was sentenced to a two-year state prison term following revocation of probation.  (*Id*. at 1597.)  Probation was not reinstated.

In *Blunt*, the appellate court observed that a "[prison] term imposed following revocation of probation . . . is imposed only for the original conviction offense and not the separate offense which caused probation to be revoked."  (*Blunt*, *supra*, 186 Cal.App.3d at p. 1600.)  It concluded that "the absence of a San Bernardino restraint [was] fatal to defendant's claim to credit for the Los Angeles custody."  (*Ibid*.)  It stated that "dual credits can be based only on dual restraints."  (*Id*. at p. 1601.)

13

In *Blunt*, the defendant's "Los Angeles custody" was neither factually nor legally attributable to the Health and Safety Code violation prosecuted in San Bernardino County. Unlike defendant Blunt, appellant was under dual restraints during the period of presentence custody at issue.

We asked the parties to submit supplemental briefing. They were directed to discuss, among other cases, *People v. Cooksey* (2002) 95 Cal.App.4th 1407 (*Cooksey*).[9] As reflected in *Cooksey*, the phrase "a single period of custody attributable to multiple offenses" contained in the second sentence of section 2900.5(b) has not been understood as referring to only custody actually caused by multiple criminal offenses. (See *Cooksey*, *supra*, at pp. 1413-1415.)

In *Cooksey*, the defendant pleaded guilty to discharging a firearm into a residence, and the trial court granted probation with a one-year jail term condition. (*Cooksey*, *supra*, 95 Cal.App.4th at p. 1414.) On April 1, 2000, while the defendant was out on probation for the firearm offense, he was arrested for robbery. (*Ibid*.) On April 5, 2000, probation was summarily revoked, and defendant was subjected to dual custodial restraints at that point. (*Ibid*.) When the defendant was finally sentenced in both cases on December 12, 2000, he was sentenced to a principal term of 10 years on the robbery and a consecutive term of one year eight months for his earlier firearm conviction. (*Id*. at p. 1413.) As to the latter term, the defendant received no credit for the time spent in custody on the probation violation. (*Ibid*.)

---

[9] The parties were asked to discuss whether *Cooksey*, *supra*, 95 Cal.App.4th 1407, *People v. Johnson* (2007) 150 Cal.App.4th 1467 (*Johnson*), and *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*) had been correctly decided and whether they could be reconciled with each other. *Kennedy* and *Johnson* did not consider or interpret the second sentence of section 2900.5(b). *In re Bentley* (1974) 43 Cal.App.3d 988, which appellant now cites, predated the 1978 amendment. Moreover, *Rojas*, *supra*, 23 Cal.3d 152, which discussed *Bentley* and expressly disapproved *Bentley* insofar as it conflicted with *Rojas* (*id*. at p. 157), applied what is now the first sentence of section 2900.5(b). (*Rojas*, *supra*, at p. 155.)

14

The appellate court in *Cooksey* concluded: "[D]efendant is not entitled to any credits on the one-year eight-month subordinate term for time spent after April 5, 2000, when his probation was revoked. This is because consecutive sentencing occurred on December 12, 2000. The controlling statutory language is that in the second sentence in section 2900.5, subdivision (b), which . . . states, 'credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.' As of April 5, 2000, defendant was subject to a 'single period of custody attributable to multiple offenses' within the meaning of section 2900.5, subdivision (b). He was subject to custodial restraint because of the April 1, 2000, robbery arrest as well as the April 5, 2000, summary probation revocation order. When defendant was sentenced to prison for robbery on December 12, 2000, he was given presentence credits from the date of his arrest, April 1, 2000. Section 2900.5, subdivision (b), only permits credit to be awarded 'once' when *consecutive* sentences are imposed as occurred here. Therefore, defendant is not entitled to credit against the subordinate one-year eight-month term for the time spent in custody from April 5, 2000; that credit was awarded on the consecutive principal term." (*Cooksey*, *supra*, 95 Cal.App.4th at pp. 1414-1415.)

Thus, as reflected in *Cooksey*, a single period of custody, where a defendant was under dual custodial restraints resulting from the defendant's arrest for one new offense and a probation hold or revocation based on only the new offense, is legally "attributable to" both the new offense and the offense of conviction underlying the grant of probation. The legislative history of the 1978 amendment of former section 2900.5 (the 1978 amendment) and the case law impetus for that amendment support *Cooksey*'s broader

15

interpretation of the word "attributable" as used in the second sentence of section 2900.5(b).[10]

The California Supreme Court commented on the genesis of that 1978 amendment in *In re Atiles* (1983) 33 Cal.3d 805 (*Atiles*), overruled in *Bruner*, *supra*, 9 Cal.4th at p. 1194 to the extent that *Atiles* "reach[ed] a contrary conclusion" to *Bruner* and disapproved on another ground in *Joyner*, *supra*, 48 Cal.3d at pp. 494-495. In *Atiles*, the court stated: "This narrowly drafted amendment has the effect of rejecting the expansive construction given section 2900.5 in *Cerda v. Superior Court* (1974) 42 Cal.App.3d 491, a . . . case in which the court ordered that a parolee be given credit for presentence confinement on a second offense even though the new term was to be *consecutive* to the original term on which the petitioner had been paroled." (*Atiles*, *supra*, at p. 812.)

In *Cerda*, the appellate court considered the original version of section 2900.5, enacted in 1971 (Stats. 1971, ch. 1732, § 2, p. 3686), as interpreted by the Supreme Court in *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*).[11] (*Cerda*, *supra*, 42 Cal.App.3d at p. 493 (*Cerda*).) The appellate court applied subdivision (b) of that original version, which provided: "For the purposes of this section, credit shall be given only where the

---

[10] As part of this court's request for supplemental briefing, we asked the parties to discuss whether that legislative history, adding the second sentence to subdivision (b) of former section 2900.5 in 1978, sheds any light on the proper application of the second sentence of section 2900.5(b) in this case. We grant appellant's unopposed request for judicial notice of the documents proffered by her to the extent that they reflect the official legislative history of the 1978 amendment. (See Evid. Code, §§ 452, subd. (c), 459; Cal. Rules of Court, rule 8.54(c); *In re Marriage of Pendleton and Fireman* (2000) 24 Cal.4th 39, 47, fn. 6; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9; *Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062 & fn. 5.)

[11] In *Kapperman*, the California Supreme Court held that subdivision (c) of the original version of section 2900.5, which made credit available only prospectively, was unconstitutional (*Kapperman*, *supra*, 11 Cal.3d at pp. 544-545, 550) and that section had to be "applied to all felony convictions, and not only to those in which presentence detention occurred as a result of indigency and inability to post bail" (*id.* at p. 549).

16

custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted." (Stats. 1971, ch. 1732, § 2, p. 3686.)

The appellate court in *Cerda* concluded that the presentence custody, which was based on Cerda's arrest for new criminal charges and a parole hold placed on the day of arrest solely because of the new charges, was " 'attributable to charges arising from the same criminal act or acts' for which he was sentenced" in the case charging the new crimes. (*Cerda*, *supra*, 42 Cal.App.3d at p. 493.) Cerda had been "sentenced on the new charges to a term which was to run consecutive to that imposed on the previous felony sentence for which he had been paroled." (*Id*. at p. 494, fn. omitted.) On review, the People unsuccessfully contended that "section 2900.5 does not apply to petitioner because it would lead to the unwarranted result giving him a double credit for the time he was incarcerated in the county jail." (*Id*. at p. 493.) "They argue[d] that the custody in the instant case was attributable to or legally caused by the prior felony conviction and the parole hold, and that, since petitioner will receive credit on the term fixed for the prior felony conviction for which he had been paroled, it was not the legislative intent that he also receive a credit towards the sentence imposed on the new charges . . . ." (*Ibid*.) The appellate court saw "no proscription" against double credit in the language of the original version of section 2900.5 (*id*. at p. 495), and it concluded that Cerda was "entitled to credit upon the sentence on the new charges for the period of time he was in custody in the county jail because such custody was attributable to the new charges." (*Ibid*.)

It is clear from the legislative history of the 1978 amendment that the Legislature intended to disallow dual credits for a single period of custody in the situation where a court imposes a consecutive sentence. The Assembly Committee on Criminal Justice's bill analysis of Senate Bill No. 1507 (1977-1978 Reg. Sess.) expressed concern that under existing law, "[i]f a person is detained in custody for the full amount of time that a consecutive sentence would allow prior to sentence, judges would be unable to adequately impose harsher penalties for consecutive sentences." (Assem. Com. on

17

Criminal Justice, Analysis of Sen. Bill No. 1507 (1977-1978 Reg. Sess.) as amended May 17, 1978, p. 2.) It explained how the bill would work using an example of a person who was convicted of two counts of forgery and entitled to six months of credit, impliedly attributable to both offenses. (*Ibid.*) Under that example, where a consecutive term was imposed, "there would be no deduction from the 8 month consecutive term." (*Ibid.*) The legislative history of Senate Bill No. 1507 (1977-1978 Reg. Sess.) is replete with general expressions of legislative intent indicating that a defendant cannot receive double credit against consecutive sentences. (See Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1507 (1977-1978 Reg. Sess.) as amended May 31, 1978 ["This bill provides that no double credit be given for the same period of time in custody if a consecutive sentence is imposed."]; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1507 (1977-1978 Reg. Sess.) as amended May 17, 1978, p. 1 ["S.B. 1507 would provide that no double credit be given for the same period of time in custody if a consecutive sentence is imposed."]; see also Cal. Dept. of Corrections, Enrolled Bill Rep. on Sen. Bill No. 1507 (1977-1978 Reg. Sess.) (June 26, 1978) p. 2 ["Double credit is eliminated by a provision that requires that credit be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed. . . . [¶] The elimination of the potential for using the same jail credits on each of several sentences solves a problem that has existed for several years. The change gives meaning to a consecutive sentence."].)

The word "attributable" as used in the second sentence of subdivision (b) of the 1978 version (now § 2900.5(b)) should not be so narrowly interpreted as to defeat that sentence's clear legislative purpose. Although the period of custody at issue was factually caused by only the new theft, it was legally attributable to multiple offenses due to the dual restraints.

In her supplemental briefing, appellant retreats from her claim that the period of custody at issue is not "attributable to multiple offenses." Appellant now agrees that

18

*Cooksey* is "consistent with the legislative history of the 1978 amendments" and was "correctly decided." She states that "[t]he crux of both *Cooksey* and the legislative materials is that presentence credits may not be doubly awarded where consecutive sentences are imposed." But she maintains that *Cooksey* is inapposite to this case.

Appellant focuses on her argument that a jail term imposed as a condition of probation does not constitute a "sentence" within the meaning of section 2900.5(b), and therefore there was not "a single period of custody attributable to multiple offenses for which a consecutive *sentence* is imposed." (Italics added.) Appellant contends that, since the 1978 version ceased to define the word "sentence," it should be assumed that the word "sentence" meant something different following the 1978 amendment than it did before that amendment. She maintains that, after the 1978 amendment, the word "hew[ed] more closely to the usual and ordinary meaning of [the word] 'sentence' " and did not include a jail term imposed as a condition of probation. That reasoning might have some surface appeal, but we reject it upon closer examination.

It is true that the 1978 amendment replaced the word "sentence" with the phrase "term of imprisonment" in a number of places in subdivisions (a) and (c) of the 1978 version. But the word "sentence" continued to be used in places in subdivisions (a), (c), and (d) of the 1978 version.[12] Although the 1978 version no longer provided a very

---

[12] Immediately before the 1978 amendment, former section 2900.5 provided in part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody . . . , all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, shall be credited upon his *sentence*, or credited to any fine which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the *sentence*. If the total number of days in custody exceeds the number of days of the *sentence* to be imposed, the entire *sentence* shall be deemed to have been served. In any case where the court has imposed both a prison or jail *sentence* and a fine, any days to be credited to the defendant shall first be applied to the *sentence* imposed, and thereafter such remaining days, if any, shall be applied to the fine. . . . [¶] (c) For the purposes of this section, " '*sentence*' " includes any fine or period of imprisonment imposed as a (continued)

19

expansive definition of the word "sentence" (see fn. 12, *ante*), nothing in the legislative history suggests that, going forward, the word "sentence" was intended to necessarily refer to only the imposition of punishment, or the punishment imposed, on the crimes of conviction and to exclude a grant of probation with a jail term condition.

A purpose of the senate bill amending former section 2900.5 in 1978 was to clarify the law.  (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1507 (1977-1978

---

condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any *sentence*, and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency. . . .  [¶]  (d) It shall be the duty of the court imposing the *sentence* to determine the total number of days to be credited pursuant to the provisions of this section.  The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213."  (Stats. 1976, ch. 1045, § 2, pp. 4665-4666, italics added.)  The 1978 version provided in part:  "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody . . . , all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his *term of imprisonment*, or credited to any fine which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the *sentence*.  If the total number of days in custody exceeds the number of days of the *term of imprisonment* to be imposed, the entire *term of imprisonment* shall be deemed to have been served. In any case where the court has imposed both a prison or jail *term of imprisonment* and a fine, any days to be credited to the defendant shall first be applied to the *term of imprisonment* imposed, and thereafter such remaining days, if any, shall be applied to the fine. . . .  [¶] (c) For the purposes of this section, " '*term of imprisonment*' " includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any *sentence*, and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency.  [¶] (d) It shall be the duty of the court imposing the *sentence* to determine the date of admission to custody, the date of release from custody, and the total number of days to be credited pursuant to the provisions of this section.  The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213."  (Stats. 1978, ch. 304, § 1, pp. 632-633, italics added.)

Reg. Sess.) as introduced, p. 1 [a purpose of the bill is to make "clarifying changes in presentence credit procedure"]; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1507 (1977-1978 Reg. Sess.) as amended May 17, 1978, p. 2 ["S.B. 1507 makes other technical changes in current law . . . ."].) The replacement of the word "sentence" with the word "term of imprisonment" in certain places was not intended to cause the statute to be applied differently. (See Cal. Dept. of Corrections, Enrolled Bill Rep. on Sen. Bill No. 1507 (1977-1978 Reg. Sess.) (June 26, 1978) p. 2 ["The change from sentence to term of imprisonment does not change the intent or operation of the section."].)

Both before and after the 1978 amendment, subdivision (d) of former section 2900.5 imposed a duty on "the court imposing the sentence" to determine the credits to which a defendant was entitled.[13] (See fn. 12, *ante*.) It would defeat the legislative purpose to interpret the word "sentence," as used in subdivision (d) of the 1978 version to exclude the imposition of a probationary jail term. Such an illogical construction would mean that courts granting probation with a jail term condition did not have a "duty" under that subdivision to determine the number of days of custody to be credited against such probationary jail term, a result directly contrary to a defendant's right to have "all days of custody" credited against a probationary jail term to the extent permitted by that section. (See Stats. 1978, ch. 304, § 1, p. 632; cf. § 2900.5, subds. (a)-(d).)

"We do not . . . consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and

_____

[13] Section 2900.5, subdivision (d), contains substantially the same language as did subdivision (d) of the 1978 version. It now provides: "It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213."

purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 (*Murphy*).) In context, the term "sentence" as used in subdivision (d) of the 1978 version logically included imposition of a jail term as a condition of probation.

We recognize that "[a]s a general rule, in construing statutes, '[w]e presume the Legislature intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version [citation].' [Citation.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 916 (*Mendoza*).) But the presumption is inapplicable here. An equally salutary principle of statutory interpretation requires us "to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose . . . . [Citations.]" (*Commission On Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290; see *Murphy*, *supra*, 25 Cal.4th at p. 142 ["[O]ur fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]"].)

Furthermore, "[i]t is . . . 'generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.' (*People v. Dillon* (1983) 34 Cal.3d 441, 468.)" (*Delaney v. Baker* (1999) 20 Cal.4th 23, 41.) This "presumption is rebuttable if there are contrary indications of legislative intent" (*id.* at pp. 41-41). Here, nothing in the legislative history of the 1978 amendment suggests that the Legislature used the word "sentence" in one sense in subdivision (d) and used it in a more restricted sense in subdivision (b) of the 1978 version.

We conclude that the word "sentence" as used in subdivision (b) of the 1978 version (now § 2900.5(b)) included a jail term imposed as a condition of probation. Any other conclusion would lead to the absurd consequence of giving appellant a windfall of dual credits against a consecutive term for a single period of custody, a result contrary to the legislative intent underlying the 1978 amendment. "We must . . . avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend. [Citations.]" (*Mendoza*, *supra*, 23 Cal.4th at p. 908.)

Appellant cites *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*) in support of her argument that the word "sentence," as used in section 2900.5(b), means imposition of punishment on the offenses of conviction. In *Howard*, the Supreme Court faced the entirely different issue whether a court that has imposed a sentence but suspended its execution to grant probation, retains authority to "impose a new sentence different from the one previously imposed" after the sentence imposed has become final and nonappealable. (*Howard*, *supra*, at p. 1084.) The court held that where a court imposes a prison sentence but suspends execution of sentence for the purpose of granting probation and a defendant accepts the sentence and probation, the court lacks authority, on revoking probation, to impose a lesser sentence at the precommitment stage. (*Id*. at pp. 1084, 1095.)

"Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.) *Howard* did not establish that the word "sentence" has a universal meaning in all contexts. Notably, the word "sentence" is sometimes used in regard to a grant of probation or the imposition of a jail term as a condition of probation. (See Pen. Code, § 19.2 ["In no case shall any person sentenced to confinement in a county or city jail . . . on conviction of a misdemeanor, or as a condition of probation upon conviction of either a felony or a misdemeanor . . . ."]; 463, subds. (a) ["Any person convicted under this

23

subdivision who is eligible for probation and who is granted probation shall, as a condition thereof, be confined in a county jail for at least 180 days, except that the court may, in the case where the interest of justice would best be served, reduce or eliminate that mandatory jail sentence . . . ."], (b) [same]; Cal. Rules of Court, rule 4.406(b) ["Sentence choices that generally require a statement of a reason include: [¶] (1) Granting probation . . . ."]; see also § 6243, subd. (f) ["These offenders shall be persons convicted and sentenced to county jail, whether or not as a condition of probation . . . ."]; § 6301 ["The primary purpose of the camps shall be the confinement, treatment, and care of persons sentenced to long jail terms, including persons so imprisoned as a condition of probation."]; 18 U.S.C.A. § 3561 ["sentenced to a term of probation"]; 18 U.S.C.S. app. §§ 5B1.1 ["sentence of probation"], 8D1.2 [same].) *Howard* does not persuade us to reach a different conclusion.

Appellant also invokes the rule of lenity, arguing that this court must resolve doubts as to the meaning of "consecutive sentence," as used in the second sentence of section 2900.5(b), in her favor because there are two plausible interpretations. The rule of lenity does not apply here. "[T]he rule applies only when two reasonable interpretations of a penal statute stand in relative equipoise. '[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent.' [Citation.]" (*People ex rel. Green v. Grewal* (2015) 61 Cal.4th 544, 565; see *People v. Boyce* (2014) 59 Cal.4th 672, 695.)

In interpreting the word "sentence" as used in section 2900.5(b), we remain mindful of the general purpose of section 2900.5, which is "to prevent inequalities in total confinement among defendants, each similarly sentenced in a *single proceeding*, which inequalities arise solely because one defendant suffered presentence confinement while another did not." (*Bruner*, *supra*, 9 Cal.4th at p. 1191.) Its purpose is not to bestow a windfall of duplicative credits. (*Ibid.*) In adding the second sentence to subdivision (b)

24

of the 1978 version (now 2900.5(b)), the Legislature intended to specifically prevent such windfall where a court imposed a consecutive sentence. The construction advocated by appellant would entail a windfall of dual credits for a single period of custody, and it could interfere with a sentencing court's intent to impose greater consequences for misconduct by ordering a probationary jail term to be served consecutively, rather than concurrently, to another term.[14]

In light of the underlying general legislative purpose of section 2900.5 and specific legislative purpose of the second sentence of 2900.5(b), we conclude that appellant's single period of custody at issue, which arose from the petty theft she committed while on probation for earlier offenses, was attributable to multiple offenses for which a consecutive sentence was imposed. Our conclusion is consistent with the Supreme Court's observation in *Bruner*: "By its terms, the [1978] amendment does no more than clarify that when consecutive terms are imposed for multiple offenses in a single proceeding, only one of the terms shall receive credit for presentence custody, while leaving undisturbed the accepted principle that when *concurrent* sentences are imposed at the same time, presentence custody is credited against all." (*Bruner*, *supra*, 9 Cal.4th at p. 1192, fn. 9.) It is also consistent with the statement in a well-respected treatise that "if the sentences for different cases are imposed consecutively, the court

---

[14] We note that a number of statutes mandate that, if a court grants probation, the court must impose a minimum period of confinement as a condition of that probation. (See e.g. Fish & G. Code, § 12005, subds. (b), (c); §§ 463, subds. (a)-(c), 647, subd. (k), 1203.076, 25850, subd. (d); Veh. Code, §§ 14601, subd. (c). 14601.2, subds. (e)-(g), 14601.4, subd. (b), 23548, subds. (a), (b), 23552, subds. (a), (b), 23556, subd. (a), 23568, subds. (a), (b).) Appellant's proposed interpretation of section 2900.5(b), which would allow a single period of custody to be doubly credited against consecutive probationary jail terms, might conceivably interfere with the Legislature's intent that defendants convicted of certain crimes serve mandatory minimum probationary terms if granted probation.

must be careful not to award duplicate credit for any particular day in custody." (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2015) § 15:12, pp. 15-35.)

Accordingly, the trial court, having credited appellant for the period of custody at issue against the probationary jail term imposed in the earlier case, properly did not also credit that period of custody against the consecutive jail term imposed as a condition of probation in this case.

## DISPOSITION

The judgment (the order granting probation) is affirmed.

_____
ELIA, ACTING P.J.

WE CONCUR:


_____
BAMATTRE-MANOUKIAN, J.



_____
MIHARA, J.




*The People v. Santa Ana*
H042604

Trial Court:                                        Monterey County Superior Court
                                                    Superior Court No.:  MS317650A


Trial Judge:                                        Honorable Pamela L. Butler


Counsel for Plaintiff and Respondent:               Dean D. Flippo
THE PEOPLE                                          District Attorney

                                                    Glenn Pesenhofer
                                                    Deputy District Attorney


Counsel for Defendant and Appellant:                Nerissa Kunakemakorn
JAMIE FELICIANO SANTA ANA                           Sixth District Appellate Program

*The People v. Santa Ana*
H042604