Filed 11/19/20  P. v. Stevens CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072003 |
| v. | (Super.Ct.No. SWF1501294) |
| JERRY WILLIAM STEVENS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Stephen J. Gallon, Judge. Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General,  Julie L. Garland, Assistant Attorney General, Daniel Rogers , Christopher Beesley and Vincent P. LaPietra, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant and appellant, Jerry Williams Stevens, repeatedly sexually assaulted his 13-year-old daughter, J.T., over the course of three weeks. A jury found him guilty of one count of aggravated sexual assault by means of forcible rape (Pen. Code, §§ 269, subd. (a)(1); 261, subd. (a)(2) & (a)(6); count 1),[1] six counts of aggravated sexual assault by means of forcible oral copulation of a child under 14 years old (§§ 269, subd. (a)(4); 288a, subd. (c)(2) & (3), (d); counts 7-12), and six counts of aggravated sexual assault by means of forcible sexual penetration of a child under 14 years old (§§ 269, subd. (a)(5); 289, subd. (a); counts 13-18). The trial court sentenced defendant to 15-year terms for each count, for a total of 195 years to life.

On appeal, defendant argues (1) there is insufficient evidence that he committed the offenses through force or duress, (2) the trial court failed to instruct the jury on lesser included offenses, (3) the trial court improperly admitted testimony of defendant's uncharged sex offenses under Evidence Code section 1108, (4) Evidence Code section 1108 is unconstitutional, and (5) his trial counsel was ineffective. We reject defendant's contentions and affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant rented a detached room with one bed behind a house that Joshua Plotner shared with his girlfriend, Samantha DeMarco-Joy. Shortly after moving in, defendant's 13-year-old daughter, J.T., who lived in Tennessee, came to spend the summer with defendant. J.T. did not want to come to California to visit defendant because he had previously molested her when they lived together in Tennessee.

J.T. stayed with defendant in his room behind Plotner's house. Over the next few weeks, defendant digitally penetrated J.T., orally copulated her, and she orally copulated him. Defendant also inserted his penis into J.T.'s vagina at least once. Defendant told J.T. to keep these incidents secret. He also showed her pornography allegedly depicting fathers having sex with their daughters in an effort to convince her that what he was doing was "okay."

Defendant's half-sister, A.M., called Plotner about three weeks after defendant moved in, and told Plotner that defendant had sexually abused her when they were children. Plotner, who was at a worksite with defendant, left work with defendant and went home. When they arrived at Plotner's house, defendant spoke with J.T. on the porch while Plotner went inside and spoke with DeMarco-Joy. Plotner then returned to the porch and told J.T. to go inside and speak with DeMarco-Joy.

DeMarco-Joy asked J.T. if "anything" ever happened between her and defendant, and asked whether he had ever touched her. J.T. began crying and said "'[i]t's farther

than that.'" Plotner came back inside and saw DeMarco-Joy was visibly angry and J.T. was crying. He asked, "what's going on?" and DeMarco-Joy replied, "'[h]e's been molesting his daughter since she's been here.'" Plotner and DeMarco-Joy went outside to confront defendant. Before they said anything, defendant immediately jumped up, ran to his truck, and drove away without saying anything while Plotner unsuccessfully chased after him.

The police arrived and took statements. Defendant was apprehended later that day. J.T. went to the police station and gave a statement that described defendant's abuse in detail. A medical examination of J.T. revealed defendant's semen was found in J.T.'s vulva.

III.

DISCUSSION

A. *Substantial Evidence Supports Defendant's Convictions*

The parties agree, as do we, that each of defendant's convictions required a finding that defendant committed the offense "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§§ 261, subd. (a)(2); 287, subd. (c)(2)(B), 289, subd. (a)(1)(A).) Defendant argues his convictions must be reversed because there was "no evidence" that he committed the offenses by fear or duress. We disagree.

4

1. *Applicable Law and Standard of Review*

When reviewing on appeal the sufficiency of evidence supporting a conviction, this court must consider the evidence presented and all logical inferences from that evidence in light of the legal definition of the charged crime. "Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant" committed the crime beyond a reasonable doubt. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.) "The standard of review is the same in cases such as this where the People rely primarily on circumstantial evidence. [Citation.]" (*Ibid*.)

"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence, [citations] it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment."'" (*People v. Bean* (1988) 46 Cal.3d 919, 932-933; *People v. Perez*, *supra*, 2 Cal.4th at p. 1124.) Accordingly, defendant "bears an enormous burden" of showing there is insufficient evidence to uphold his convictions. (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 (*Veale*).)

5

2. *Analysis*

Duress is "'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to 1) perform an act which otherwise would not have been performed or, 2) acquiesce in an act to which one otherwise would not have submitted.' [Citations.]" (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005, 1010.)[2] This definition is "objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*).) To evaluate duress, we look at "[t]he totality of the circumstances includ[ing] the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072-1073 (*Thomas*).)

Duress can take the "'form of psychological coercion to get someone else to do something.'" (*Soto*, *supra*, 51 Cal.4th at p. 243; see *People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*), overruled on different grounds by *Soto*, *supra*, at p. 248, fn. 12.) "Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes." (*People v. Schulz* (1992) 2 Cal.App.4th 999, 1005.) Duress also can be established by "a defendant's attempt to

---

[2] Threat of hardship does not apply to count 1. (*People v. Leal*, *supra*, 33 Cal.4th at pp. 1004-1005, 1010.)

6

isolate the victim and increase or maintain her vulnerability to his assaults." (*Cochran*, *supra*, at p. 15.) "When the victim is young and is molested by her father in the family home, duress will be present *in all but the rarest cases*." (*Thomas*, *supra*, 15 Cal.App.5th at pp. 1072-1073, italics added.)[3]

This is not one of those rare cases. Defendant began molesting J.T. when she was 11, when they lived together in Tennessee. She was afraid to report what had happened, but eventually told K., the daughter of the family J.T. and defendant were living with at the time. K. later reported the abuse. When J.T.'s mother learned that the police were responding to the reported abuse, she helped defendant evade arrest by taking him, J.T., and her siblings to a hotel. While driving to the hotel, J.T.'s mother asked J.T. if defendant had abused her, but J.T. was too scared to say anything because defendant was in the car. J.T.'s mother never asked her again about the abuse.

Defendant committed his current offenses against J.T. almost every night while she was staying with him in a detached room with one bed in California, far away from anyone she knew well. J.T. did not want to come to California in the first place because of defendant's prior abuse, but felt like she could not say so, in part because she was not

---

[3] We acknowledge this principle was drawn from cases involving a seven-year-old and nine-year-old victim, whereas J.T. was almost 14 at the time of defendant's offenses. We do not believe this difference is material here. When assessing duress, we ask whether the victim was at "an age at which adults are commonly viewed as authority figures," and thus whether the victim was "susceptib[le] . . . to intimidation by an adult." (*Veale*, *supra*, 160 Cal.App.4th at p. 50.) At 13, children normally view their parents as authority figures. Regardless, as explained in more detail below, there was substantial evidence that defendant committed the offenses against J.T. by duress.

sure how her mother would react given that she previously told her mother that defendant had not abused her.

On occasion, defendant made J.T. sleep in the detached room instead of in the house, and abused her on those occasions. This shows that defendant "attempt[ed] to isolate [J.T.] and increase or maintain her vulnerability to his assaults." (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)

Defendant would always initiate the abuse by taking off J.T.'s pajamas. J.T. usually would be using her tablet, and defendant would take it away from her.

Defendant penetrated J.T. with his penis more than once, including on the night before his arrest. When doing so on one occasion, she was lying on her back and he got on top of her. J.T. felt like she could not get up. J.T. tried to push him off because it hurt.

At times, defendant dragged J.T.'s hand across his penis. He also pushed her head down while she copulated him at least once. When he did that, J.T. tried to say no, but defendant "made" her do it. Defendant told J.T. to swallow his semen at least once. The jury could reasonably infer that this was "an 'order,' not a request." (*People v. Reyes* (1984) 153 Cal.App.3d 803, 811.) As J.T. testified, she felt like she had to touch defendant's penis and keep it in her mouth.

In fact, J.T. felt like she "had to do" all of the sexual acts defendant initiated and requested. J.T. tried to "say no" to the abuse, but defendant persisted. Although defendant once stopped the abuse at J.T.'s request, he did it again the next day. J.T.

8

knew defendant was "much stronger" and she was afraid of what would happen if she told him to stop the abuse. J.T. also felt like she had to tell defendant "it felt good" because she "didn't know what he would do if" she said no, or if "it would irritate him or anything." J.T. was scared to report the abuse because of defendant's past violent behavior. He had angry outbursts in the past, which scared her, and were the reason why she did not report the abuse in Tennessee. In particular, J.T. was afraid of defendant because she witnessed him fighting with her mother, during which defendant was "pushing her [mother] around."

Defendant frequently showed J.T. pornography depicting a father having sex with his daughter, and told her what he was doing to her was "okay" because the people in the pornography were doing it too. Defendant also told J.T. to keep the abuse secret. By doing so, defendant exerted a form of "psychological pressure" that implied she "should not otherwise protest or resist the sexual imposition." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

The fact that defendant did not always "use force or threats does not require a finding of no duress" given J.T.'s "age and her relationship to the defendant." (*Cochran*, *supra*, 103 Cal.App.4th at p.14.) "'The very nature of duress is psychological coercion.'" (*Veale*, *supra*, 160 Cal.App.4th at p. 48; accord, *Cochran*, *supra*, at p.15.) "A perpetrator may *use* duress . . . against a victim even if this conduct does not ultimately influence the victim's state of mind." (*Soto*, *supra*, 51 Cal.4th at p. 243.)

For instance, in *People v. Pitman* (1985) 170 Cal.App.3d 38, 50, the court held there was substantial evidence of duress even though the defendant did not use force, violence, or the threat of violence. Similarly, in *Veale*, *supra*, 160 Cal.App.4th 40, the defendant abused his seven-year-old stepdaughter several times, generally when they were alone in the house, without making any verbal or physical threats. (*Id*. at p. 43.) The victim testified that she did not tell her mother because she was afraid, did not think her mother would believe her, and was afraid the defendant would hurt her or her mother if she reported the abuse, although he never said he would. (*Ibid*.) The *Veale* court held that, even in the absence of threats or physical force, the jury could reasonably find duress based on an implied threat from the victim's fear, age, and size compared to the defendant. (*Id*. at p. 47.)

Here, there was substantial evidence that defendant committed his offenses against J.T. through duress given that (1) defendant is J.T.'s father, a position of dominance in a single-parent household, (2) he isolated her in the detached room away from other adults in the main house, (3) he told her to keep the abuse secret, (4) he tried to convince her it was acceptable by showing her pornography depicting fathers and daughters having sex, (5) he was "much stronger" than J.T., (6) he sometimes directed J.T.'s participation in the abuse, and (7) J.T. was afraid to report the abuse due to defendant's previous violent behavior. Viewed objectively, the evidence was sufficient to permit the jury to reasonably conclude that defendant committed the offenses by placing J.T. under duress, particularly given that J.T. was afraid to report the abuse and felt obliged to participate in

10

it.  The record thus establishes that J.T. was a young, "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority." (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)

Defendant's reliance on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*) and *People v. Hecker* (1990) 219 Cal.App.2d 1238 (*Hecker*) does not alter our conclusion.  In *Espinoza*, the defendant repeatedly molested his 12-year-old daughter on several occasions.  (*Espinoza*, *supra*, at p. 1293.)  She testified she was "'too scared to do anything'" while her father abused her, and was afraid to report the molestation because she thought he "'would come and do something.'"  (*Id*. at pp. 1293-1294.)  The *Espinoza* court held there was insufficient evidence of duress because the victim never testified the defendant used "any 'direct or implied threat' of any kind."  (*Id*. at p. 1321.)  In reaching this conclusion, the *Espinoza* court relied on *Hecker*, which broadly held that "'"[p]sychological coercion" without more does not establish duress.  At a minimum there must be an implied threat of "force, violence, danger, hardship or retribution."'"  (*Id*. at p. 1321.)

Subsequent decisions have cast doubt on *Espinoza* and *Hecker*.  The same court that decided *Hecker* later explained in *Cochran* that some of "th[e] language in *Hecker* is overly broad" because "[t]he very nature of duress is psychological coercion."  (*Cochran*, *supra*, 103 Cal.App.4th at p. 15; accord, *Veale*, *supra*, 160 Cal.App.4th at pp. 48-50.)  Most importantly, our Supreme Court in *Soto* approved a definition of duress in child molestation cases more in line with *Cochran*, describing duress as "'us[ing] some form of

11

psychological coercion to get someone else to do something.'" (*Soto*, *supra*, 51 Cal.4th at p. 243.) *Espinoza* and *Hecker* therefore do not persuade us that defendant committed his offenses against J.T. without duress.

B. *The Trial Court Did Not Err By Failing to Instruct on Lesser Included Offenses*

Defendant contends the trial court erred by failing to sua sponte instruct the jury on "nonforcible" lesser included offenses.[4] We disagree.

An uncharged offense is included in a greater charged offense if the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), or the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test). (*People v. Parson* (2008) 44 Cal.4th 332, 349.) "[E]ven absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] '"That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]"' [Citation.] '[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is

---

[4] Like the parties, we refer to "forcible" offenses as those that required the requisite element of force, violence, duress, retribution, menace, or fear, and refer to "nonforcible" offenses as those that do not require any such element.

12

"substantial enough to merit consideration" by the jury.  [Citations.]'  [Citation.]"

(*People v. Taylor* (2010) 48 Cal.4th 574, 623.)  ""Substantial evidence" in this context is

"'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]'"

that the lesser offense, but not the greater, was committed.'"  (*People v. Moye* (2009) 47

Cal.4th 537, 553.)  We review the failure to give a lesser included offense instruction

under the de novo standard of review.  (*People v. Cooksey* (2002) 95 Cal.App.4th 1407,

1411.)

As to count 1, aggravated sexual assault by means of forcible rape (§§ 269, subd.

(a)(1); 261, subd. (a)(2) & (a)(6)), defendant argues the trial court should have instructed

the jury on unlawful sexual intercourse with a minor more than three years younger than

the perpetrator (§ 261.5, subd. (c)) as a lesser included offense.  As to counts 7 through

12, aggravated sexual assault of a minor by means of forcible oral copulation (§§ 269,

subd. (a)(4); 287, subd. (c)(2) or (c)(3) or (d)), defendant argues the trial court should

have instructed the jury on oral copulation of a minor (§ 287, subd. (b)(1)) as a lesser

included offense.  As to counts 13 through 18, aggravated sexual assault of a child by

means of forcible sexual penetration (§§ 269, subd. (a)(5); 289, subd. (a)), defendant

argues the trial court should have instructed the jury on sexual penetration of a minor

(§ 289, subd. (h)) as a lesser included offense.

The People agree as to count 1, and we accept their concession.  We also accept

defendant's concession that sexual penetration of a minor (§ 289, subd. (h)) is not a lesser

included offense of aggravated sexual assault of a child by means of forcible sexual

13

penetration (§§ 269, subd. (a)(5); 289, subd. (a); counts 13-18).  We assume without deciding that defendant is correct that oral copulation of a minor (§ 287, subd. (b)(1)) is a lesser included offense of sexual assault of a minor by means of forcible oral copulation (§§ 269, subd. (a)(4); 287, subd. (c)(2) or (c)(3) or (d); counts 7-12).

However, as the parties agree, the trial court was obliged to give instructions as to the allegedly nonforcible lesser included offenses only if there was substantial evidence that defendant committed the offenses nonforcibly.  Defendant argues there was such substantial evidence because there was sufficient evidence that would allow the jury to conclude that he committed the offenses nonforcibly, that is, without duress.  We disagree.

Defendant did not submit any evidence that he committed the offenses without duress.  Indeed, he denied that he committed any offense at all.  J.T., on the other hand, unequivocally and repeatedly testified that defendant committed the offenses against her will, she felt forced to participate, she was scared to say no, and defendant at times physically directed her participation.  As explained in more detail above, the circumstances under which defendant committed the offenses established that he accomplished them by duress.  (See *Thomas*, *supra*, 15 Cal.App.5th at pp. 1072-1073 ["When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases."].)  Defendant does not identify, and we cannot locate, any evidence in the record from which the jury could reasonably infer that defendant committed his offenses against J.T. without duress.  On this record, the jury

14

could not reasonably conclude "'that the lesser offense, but not the greater, was committed'" because no substantial evidence showed that defendant committed counts 1 and 7 through 12 without force or duress.  (*People v. Moye*, *supra*, 47 Cal.4th at p. 553.)

Finally, even if the trial court erred by failing to instruct the jury on lesser included offenses, any resulting error was harmless.  When a trial court fails to instruct on lesser included offenses, reversal is not required "unless an examination of the entire record establishes a reasonable probability that the error affected the outcome."  (*People v. Breverman* (1998) 19 Cal.4th 142, 165; *People v. Racy* (2007) 148 Cal.App.4th 1327, 1335 ["In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818."].)  A "'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

We conclude it is not reasonably probable that defendant would have received a more favorable outcome had the trial court instructed the jury on the alleged lesser included offense.  In our view, there was overwhelming evidence that defendant committed the offenses against J.T. through duress, including her young age, the fact that defendant is her father, and the psychological and sometimes physical pressure he exerted on her.  (See *Thomas*, *supra*, 15 Cal.App.5th at pp. 1072-1073 ["When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases."].)  Given J.T.'s age, defendant's authoritative status as her father, the

15

circumstances under which defendant abused J.T., and because the jury apparently believed defendant abused J.T. in the manner described, it is not reasonably probable the jury would have found that defendant committed the alleged lesser included offenses had that been an option. The jury was instructed on assault, battery and simple sexual assault. If it had concluded defendant committed his offenses against J.T. without duress or some form of force, it likely would have found defendant guilty of one of these lesser offenses. Instead, it found defendant guilty of all 13 counts and, in so doing, found that he committed the offenses forcibly.

In addition, the jury was instructed that to find defendant guilty on all counts, it must find that J.T. did not consent and that defendant accomplished the offenses by force, violence, duress, menace, fear of injury to J.T. or someone else, or the threat of retaliation. By finding defendant guilty of all 13 counts, the jury necessarily found that J.T. did not consent. Given the strong evidence that defendant committed the offenses through duress and the jury's findings that J.T. did not consent, there is no reasonable probability that the lack of the lesser included offense instructions affected the verdict.

C. *The Trial Court Did Not Abuse its Discretion By Admitting Testimony About Defendant's Uncharged Sex Offenses*

Defendant asserts the trial court prejudicially erred by admitting testimony from A.M. and K.W. that defendant committed sex offenses against them under Evidence Code section 1108. We disagree.

16

### 1. *Additional Background*

A.M., defendant's younger half-sister, testified that defendant repeatedly sexually abused her when she was between the ages of two and 10. He performed oral sex on her, made her perform oral sex on him, and digitally penetrated her. He eventually began penetrating her with his penis. Defendant's abuse stopped when A.M. and defendant lived in separate states when A.M. was between the ages of 11 and 16, but moved back in together when she was 16. Defendant began abusing her again. When A.M. was 16, she disclosed the abuse to a friend, and later to the police.

Defendant sexually abused K.W. when she was between the ages of 13 and 16. At the time, defendant was living with K.W., her older sister (defendant's ex-girlfriend), and their father in Tennessee. Defendant "sometimes" abused K.W. "a couple days in a row or sometimes it would be a month later," but always did it at night when everyone was sleeping. He abused K.W. by orally copulating her, and digitally penetrating her, and forcing her to orally copulate him.

### 2. *Applicable Law and Standard of Review*

"The general public policy on character or propensity evidence is that it is *not* admissible to prove conduct on a given occasion." (*People v. Cottone* (2013) 57 Cal.4th 269, 285.) The Legislature, however created an exception for sex offense cases through Evidence Code section 1108, which provides in relevant part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence

Code] [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352." (Evid. Code, § 1108, subd. (a).)

Thus, under Evidence Code section 1108, there is a "presumption *favoring* the admissibility of sexual offense evidence . . . to show propensity to commit the charged offense." (*People v. Merriman* (2014) 60 Cal.4th 1, 42, italics added.) Evidence Code section 1108 nonetheless "preserves the trial court's discretion to exclude evidence under [Evidence Code] section 352 if its prejudicial effect substantially outweighs its probative value. [Citations.] In deciding whether to exclude evidence of another sexual offense under [Evidence Code] section 1108, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' [Citation.] Like any ruling under [Evidence Code] section 352, the trial court's ruling admitting evidence under [Evidence Code] section 1108 is subject to review for abuse of discretion." (*People v. Story* (2009) 45 Cal.4th 1282, 1294-1295.)

3. *Analysis*

At the outset, we reject defendant's suggestion that the admission of evidence of uncharged sex crimes under Evidence Code section 1108 is unconstitutional. Our

18

Supreme Court has directly held otherwise, and we are bound by that decision. (*People v. Loy* (2011) 52 Cal.4th 46, 60-61; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We also need not decide whether defendant forfeited his objection to the admission of A.M.'s testimony, as the People maintain, because we conclude the trial court did not abuse its discretion by admitting her testimony.

A.M. called Plotner when she learned that J.T. was living with him to tell him that defendant had sexually abused her (A.M.) when she was younger. As defendant recognized, his abuse of A.M. was therefore relevant to explaining why A.M. called Plotner "'out of the blue.'" A.M.'s testimony about defendant's abuse also was relevant because it showed that defendant abused her in a manner similar to how he abused J.T.— first by orally and digitally molesting her, then progressing to penetrating her with his penis. (See *People v. Avila* (2014) 59 Cal.4th 496, 516 [evidence of prior uncharged conduct was relevant because it involved abuse of young girls, "suggesting defendant was a pedophile who committed the crimes against the young female victim in this case"].) The straightforward nature of A.M.'s testimony and defendant's charges was not likely to distract the jurors. Finally, her testimony was not unduly prejudicial or inflammatory because defendant's uncharged sex offenses against her were not more egregious than his charged offenses against J.T. (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 406 [evidence of "uncharged sexual misconduct" was not unduly inflammatory because it was as "equally graphic" as charged offense]; *People v. Harris* (1998) 60 Cal.App.4th 727, 738 [evidence of violent attack of a stranger extremely

19

inflammatory because it was more egregious than charged offense of licking and fondling incapacitated victim].)

The facts that weigh against the admission of A.M.'s testimony are that there was no corroborating evidence and the uncharged offenses occurred 15 to 31 years earlier. But defendant's offenses against A.M. were not an isolated event that she remembered vaguely or inconsistently. A.M. testified unequivocally that defendant sexually abused her on a near-daily basis for years. Nothing in her testimony suggests she was uncertain about what defendant did to her or could not remember the details. Thus, the trial court could rationally conclude A.M.'s certainty of defendant's offenses against her were sufficient to allow her to testify about them, particularly given the highly probative value of her testimony. (See *People v. Story*, *supra*, 45 Cal.4th at p. 1294 [trial court must evaluate "certainty" that prior uncharged sex offenses were committed].) Although the offenses were 15 to 31 years in the past, "[n]umerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred *decades* before the current offenses." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992 [collecting cases upholding the admission of sex offenses from 18 to 30 years in the past].) The similarities between the charged and uncharged offenses in this case, as well as the probative value of A.M.'s testimony, balance out the remoteness.

In sum, the trial court reasonably found that the factors the trial court was to consider under Evidence Code section 1108 weighed in favor of admission of A.M.'s

20

testimony. We therefore conclude the trial court did not abuse its discretion by admitting her testimony.

We reach the same conclusion as to K.W.'s testimony for the same reasons. Like A.M., K.W. testified that defendant repeatedly sexually abused her over the course of several years in a manner similar to how he abused J.T. He waited until everyone was asleep and would orally copulate K.W., digitally penetrate her, and make her orally copulate him.

To the extent defendant argues K.W.'s testimony should not have been admitted because of the "passage of time, absence of records, and distant locality," defendant forfeited the argument by failing to object on those grounds in the trial court. (See *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1099.) Regardless, those considerations do not change our conclusion that K.W.'s testimony was properly admitted. Defendant's offenses against K.W. occurred 15 years before his current offenses, so they were not impermissibly remote in time. (*People v. Robertson*, *supra*, 208 Cal.App.4th at p. 992 [collecting cases upholding the admission of sex offenses from 18 to 30 years in the past].) The fact that there was no corroborating evidence did not preclude the admission of K.W.'s testimony. Whether she was credible was for the jury to decide. As to defendant's abuse of K.W. occurring in a "distant locality," defendant provides no authority or explanation for why the fact that his offenses against K.W. occurred in Tennessee weighed in favor of excluding her testimony. Finally, although K.W.'s testimony was arguably more inflammatory in that she claimed she did not report

21

defendant's abuse because he once used physical violence against her and also threatened her and her father with a gun, that testimony was elicited by defense counsel. In any event, given that several other relevant factors weighed in favor of admitting K.W.'s highly relevant testimony, the trial court did not abuse its discretion by allowing K.W.'s testimony under Evidence Code section 1108.

D. *Ineffective Assistance of Counsel*

Defendant claims his trial counsel was ineffective for failing to explore a DNA defense and for failing to object to alleged prosecutor misconduct. We disagree.

1. *Applicable Law*

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Accordingly, "[w]hen the record on direct appeal sheds no light on why counsel failed to act in the manner challenged [the defendant asserts counsel should have acted], defendant must show that there was ""'no conceivable tactical purpose'" for counsel's act or omission. [Citations.]'" (*People v. Centeno* (2014) 60 Cal.4th 659, 675.) "[R]arely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) If the record sheds no light on counsel's actions, the claim must be rejected unless no satisfactory explanation exists or counsel was asked for an explanation and failed to provide one. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

### 2. *DNA defense*

Defendant claims his counsel was ineffective for failing to provide expert testimony to corroborate his belief that his semen was found on J.T. because she used a towel that a woman defendant slept with the day before used the towel after they had intercourse. Defense counsel may have had a tactical reason not to pursue this theory because, as the People point out, defendant "has never identified the woman." There is no evidence in the record as to her identity, whether she would have corroborated defendant's theory, or even whether she could be located to testify. There is also nothing in the record about whether Plotner, DeMarco-Joy, or J.T. knew anything about the woman, or whether they would have testified that they never saw her, which could have undermined defendant's theory. Finally, defense counsel represented to the trial court in a post-trial *Marsden* hearing[5] that defendant told him that "[defendant] wasn't worried about the DNA" evidence, which further suggests that defense counsel may have made a tactical decision not to pursue a DNA-based defense—after conferring with defendant about it. Because there are conceivable reasons for why defense counsel did not pursue a DNA defense, defendant's ineffective assistance of counsel claim fails.

### 3. *Prosecutorial Misconduct*

Defendant argues the prosecutor committed misconduct by asking defendant a series of questions during cross-examination and that his defense counsel was ineffective for failing to object. We disagree.

---

[5] *People v. Marsden* (1970) 2 Cal.3d 118.

"""""A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"" [Citation.]" [Citation.]'" (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 241.)

"""A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.'""" (*People v. Tully* (2012) 54 Cal.4th 952, 1009.) A prosecutor's misconduct violates California law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. (*Id*. at pp. 1009-1010.) An objection must be raised, and an admonition sought for the issue to be preserved on appeal. (*Id*. at p. 1010.)

Prosecutorial misconduct that violates state law warrants reversal only when it is reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the untoward conduct. (*People v. Milner* (1988) 45 Cal.3d 227, 245; see *People v. Crew* (2003) 31 Cal.4th 822, 839.)

We review de novo a defendant's claim of prosecutorial misconduct. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 860.) "'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from

the prosecutor's statements.'" (*People v. Brown* (2003) 31 Cal.4th 518, 553-554.) We consider the prosecutor's remarks in context of the entire record. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 665-666.) We presume, in the absence of evidence to the contrary, that the jury understands and follows instructions from the trial court. (*People v. Fauber* (1992) 2 Cal.4th 792, 823.) We presume that jurors treat the court's instructions as statements of law, and the arguments of the prosecutor as words spoken by an advocate in an attempt to persuade. (*People v. Thornton* (2007) 41 Cal.4th 391, 441.)

The first exchange, according to defendant, involved "argumentative questions about [his] relationships with various women which served no purpose except to paint him as a person of bad character." The exchange went as follows:

"[THE PROSECUTOR]: So [J.T.'s mother] was pregnant with (J.T.) at the time that you were kicked out of Rhonda's, right?

"[DEFENDANT]: Yes.

"[THE PROSECUTOR]: And you didn't take her with you, did you?

"[DEFENDANT]: I had no place to take her.

"[THE PROSECUTOR]: You just kind of left your pregnant girlfriend?"

"[THE PROSECUTOR]: So how long were you dating Amber?

"[DEFENDANT]: Roughly – maybe three, four weeks before she got pregnant until right before she had Jonathan.

"[THE PROSECUTOR]: And so you leave Rhonda's and - - but do you see Jenny again, or do you just let her fend for herself?"

25

"[THE PROSECUTOR]: You were still living with Amber when she was pregnant, right?

"[DEFENDANT]: Yes.

"[THE PROSECUTOR]: And you started dating Katie?

"[DEFENDANT]: Yes.

"[THE PROSECUTOR]: And you moved in with her pretty fast, didn't you?"

In the second series of questions, the prosecutor asked defendant four separate times why a witness would lie or falsely accuse him. Although defense counsel objected each time and the trial court sustained the objections, defendant contends trial counsel was ineffective for failing to ask the trial court for an admonition.

In the third exchange, the prosecutor continued to ask defendant about whether witnesses were lying:

"[THE PROSECUTOR]: So everyone's lying?

"[DEFENDANT]: I didn't sexually abuse anybody.

"[THE PROSECUTOR]: So they're all lying about that?

"[DEFENDANT]: I didn't sexually abuse anybody.

"[THE PROSECUTOR]: They're all lying about that, right?"

Defense counsel objected, and the trial court sustained the objection.

We assume without deciding that the prosecutor's questioning was improper and that defense counsel should have objected to all of the questions and asked for an admonition from the trial court. Even so, defendant cannot establish he was prejudiced

26

by counsel's failure to object or failure to request an admonition. It is not reasonably probable that defendant would have obtained a more favorable result had defense counsel objected to the prosecutor's questions. The evidence of defendant's guilt was significant and turned primarily on the credibility of defendant, J.T., and the several other witnesses who testified that defendant had repeatedly sexually abused them. The prosecutor's questioning likely had little, if any, effect on the jury's evaluation of the evidence. On this record, defendant's ineffective assistance of counsel claim fails.

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

27